STEPHEN LOSTRITTO *v.* COMMUNITY ACTION
AGENCY OF NEW HAVEN, INC., ET AL.
(SC 16808)

Sullivan, C. J., and Borden, Katz, Vertefeuille and Zarella, Js.

---

Argued October 28, 2003—officially released May 18, 2004

*James V. Somers*, with whom were *Laura Pascale Zaino* and, on the brief, *Richard C. Tynan* and *Lisa M. Kowtko*, for the appellants (defendants).

*Michael P. Del Sole*, for the appellees (apportionment defendant Neurosurgical Associates of Connecticut, P.C., et al.).

*Michael D. Neubert*, with whom was *Gretchen L. Grosick*, for the appellee (apportionment defendant Murphy and Lieponis, P.C., et al.).

*Opinion*

VERTEFEUILLE, J. The principal issue in this appeal is whether General Statutes § 52-102b (a),[1] which

[1] General Statutes § 52-102b provides: "(a) A defendant in any civil action to which section 52-572h applies may serve a writ, summons and complaint upon a person not a party to the action who is or may be liable pursuant to said section for a proportionate share of the plaintiff's damages in which case the demand for relief shall seek an apportionment of liability. Any such writ, summons and complaint, hereinafter called the apportionment complaint, shall be served within one hundred twenty days of the return date specified in the plaintiff's original complaint. The defendant filing an apportionment complaint shall serve a copy of such apportionment complaint on all parties to the original action in accordance with the rules of practice of the Superior Court on or before the return date specified in the apportionment complaint. The person upon whom the apportionment complaint is served, hereinafter called the apportionment defendant, shall be a party for all purposes, including all purposes under section 52-572h.

"(b) The apportionment complaint shall be equivalent in all respects to an original writ, summons and complaint, except that it shall include the docket number assigned to the original action and no new entry fee shall be imposed. The apportionment defendant shall have available to him all remedies available to an original defendant including the right to assert defenses, set-offs or counterclaims against any party. If the apportionment complaint is served within the time period specified in subsection (a) of

requires service of an apportionment complaint within 120 days after the return date of the original complaint, is mandatory or directory in nature. The defendants, Community Action Agency of New Haven, Inc. (Com-

this section, no statute of limitation or repose shall be a defense or bar to such claim for apportionment, except that, if the action against the defendant who instituted the apportionment complaint pursuant to subsection (a) of this section is subject to such a defense or bar, the apportionment defendant may plead such a defense or bar to any claim brought by the plaintiff directly against the apportionment defendant pursuant to subsection (d) of this section.

"(c) No person who is immune from liability shall be made an apportionment defendant nor shall such person's liability be considered for apportionment purposes pursuant to section 52-572h. If a defendant claims that the negligence of any person, who was not made a party to the action, was a proximate cause of the plaintiff's injuries or damage and the plaintiff has previously settled or released the plaintiff's claims against such person, then a defendant may cause such person's liability to be apportioned by filing a notice specifically identifying such person by name and last known address and the fact that the plaintiff's claims against such person have been settled or released. Such notice shall also set forth the factual basis of the defendant's claim that the negligence of such person was a proximate cause of the plaintiff's injuries or damages. No such notice shall be required if such person with whom the plaintiff settled or whom the plaintiff released was previously a party to the action.

"(d) Notwithstanding any applicable statute of limitation or repose, the plaintiff may, within sixty days of the return date of the apportionment complaint served pursuant to subsection (a) of this section, assert any claim against the apportionment defendant arising out of the transaction or occurrence that is the subject matter of the original complaint.

"(e) When a counterclaim is asserted against a plaintiff, he may cause a person not a party to the action to be brought in as an apportionment defendant under circumstances which under this section would entitle a defendant to do so.

"(f) This section shall be the exclusive means by which a defendant may add a person who is or may be liable pursuant to section 52-572h for a proportionate share of the plaintiff's damages as a party to the action.

"(g) In no event shall any proportionate share of negligence determined pursuant to subsection (f) of section 52-572h attributable to an apportionment defendant against whom the plaintiff did not assert a claim be reallocated under subsection (g) of said section. Such proportionate share of negligence shall, however, be included in or added to the combined negligence of the person or persons against whom the plaintiff seeks recovery, including persons with whom the plaintiff settled or whom the plaintiff released under subsection (n) of section 52-572h, when comparing any negligence of the plaintiff to other parties and persons under subsection (b) of said section."

munity Action), and Elizabeth Barrett, appeal from two judgments of dismissal rendered by the trial court in favor of both sets of apportionment defendants, Neurosurgical Associates of Connecticut, P.C., and its employee, Harry P. Engel (collectively, Neurosurgical Associates), and Murphy and Lieponis, P.C., and its employee, Jonas Lieponis (collectively, Murphy & Lieponis).[2] The trial court, *Robinson-Thomas, J.*, dismissed the apportionment complaint as to Neurosurgical Associates, concluding that the court lacked jurisdiction due to the defendants' failure to serve Neurosurgical Associates within the 120 day time period mandated by § 52-102b (a).[3] Acting on a separate motion, the trial court, *Booth, J.*, dismissed the apportionment complaint as to Murphy & Lieponis, determining that the defendants' failure to comply with the mandatory provisions of § 52-102b (a) prevented the court from exercising subject matter jurisdiction.

On appeal, the defendants claim that the 120 day time limitation for bringing an apportionment claim prescribed by § 52-102b (a) is directory, and therefore, the trial court, by interpreting that provision as mandatory, improperly dismissed their apportionment complaint. The defendants also claim that the trial court improperly dismissed the apportionment complaint in light of the trial court's previous grant of an extension of time during which to bring the apportionment claim. We conclude that the 120 day time limitation contained in § 52-102b (a) is mandatory and we further determine that the ninety day extension was ineffective in extending that limitation period. We further conclude that noncompliance with § 52-102b implicates a court's personal jurisdiction, not subject matter jurisdiction.

---

[2] Collectively, we refer to these four parties as the apportionment defendants.

[3] The trial court did not specify whether it found a lack of subject matter jurisdiction or a lack of personal jurisdiction.

Accordingly, we affirm the judgments of the trial court dismissing the apportionment complaint as to all of the apportionment defendants.

The following facts and procedural history guide our resolution of this appeal. In a complaint dated May 21, 2001, with a return date of June 19, 2001, the plaintiff, Stephen Lostritto,[4] commenced a personal injury action against the defendants, seeking damages for injuries allegedly sustained as a result of the defendants' negligence in a motor vehicle accident.[5] On October 12, 2001, the defendants, who sought to apportion liability to the plaintiff's health care providers, filed a motion requesting a ninety day extension of time within which to serve an apportionment complaint. The defendants claimed that, because the apportionment complaint would allege medical malpractice, additional time beyond the 120 days provided by § 52-102b (a) was needed to conduct a reasonable inquiry, as required by General Statutes § 52-190a (a),[6] into whether a good

___

[4] Lostritto, the original plaintiff, died on June 17, 2001. Lori Paiva, administratrix of Lostritto's estate, was substituted as plaintiff on June 17, 2002, pursuant to General Statutes § 52-599 (b). Because Paiva did not amend the complaint to assert claims directly against the apportionment defendants, she is not a party to this appeal. For convenience, we refer to Lostritto as the plaintiff.

[5] In a one count complaint, the plaintiff alleged that Barrett, the operator of the motor vehicle owned by Community Action, her employer, negligently collided with his vehicle while she was making a U-turn on Route 34 in the town of Orange.

[6] General Statutes § 52-190a (a) provides in relevant part: "No civil action shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint or initial pleading shall contain a certificate, on a form prescribed by the rules of the superior court, of the attorney or party filing the action that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant. . . ."

faith basis existed for such a claim and to obtain the necessary good faith certificates. No objection to the motion was filed, and the trial court, *Silbert, J.*, granted a ninety day extension on October 15, 2001. Thereafter, on January 14, 2002, the defendants served Neurosurgical Associates with a summons and complaint alleging that the apportionment defendants were liable to the plaintiff for a percentage of the claimed damages due to their alleged medical malpractice. Three days later, on January 17, 2002, the defendants served Murphy & Lieponis with the same complaint.

On February 4, 2002, Neurosurgical Associates filed a motion to dismiss the apportionment complaint as it pertained to it, arguing that "the court lack[ed] jurisdiction over these Apportionment Defendants because the Apportionment Complaint [was] not in compliance with the requirements of . . . § 52-102b (a)." The defendants objected, arguing that the apportionment complaint was timely filed within the ninety day extension period previously granted by the trial court and, therefore, the court had jurisdiction over the action. The trial court, *Robinson-Thomas, J.*, granted Neurosurgical Associates' motion, ruling that, despite the ninety day extension, it did not have jurisdiction over the apportionment action because the apportionment complaint was filed more than 120 days after the return date of the original complaint as mandated by § 52-102b (a). Thereafter, the trial court rendered a partial judgment of dismissal in favor of Neurosurgical Associates.

Murphy & Lieponis, by way of a separate motion filed on February 13, 2002, also sought to dismiss the apportionment complaint as it pertained to it. Murphy & Lieponis, like Neurosurgical Associates, claimed that the 120 day window provided by § 52-102b (a) was mandatory; however, Murphy & Lieponis specifically argued that the court "lack[ed] subject matter jurisdiction over

the Apportionment Complaint because it was not filed within 120 days of the return date specified in [the] [p]laintiff's original complaint, as required by [§] 52-102b (a) . . . ." Again, the defendants objected, claiming that the apportionment complaint was timely filed within the ninety day extension period and, therefore, the court had jurisdiction over the apportionment action. The trial court, *Booth, J.,* granted Murphy & Lieponis' motion to dismiss, ruling that § 52-102b (a) mandates that an apportionment complaint be filed within 120 days of the return date on the original complaint, and, in the present case, the defendants' failure to do so deprived the court of subject matter jurisdiction. Subsequently, the trial court rendered a partial judgment of dismissal in favor of Murphy & Lieponis.

The defendants appealed from the trial court's judgment of dismissal as to Neurosurgical Associates to the Appellate Court.[7] We then transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. The defendants subsequently amended their appeal to this court to include the trial court's judgment of dismissal in favor of Murphy & Lieponis.

I

The defendants' first claim on appeal is that the 120 day time limitation for bringing an apportionment claim prescribed by § 52-102b (a) is directory and, therefore, the trial courts, which interpreted § 52-102b (a) as mandatory, improperly dismissed their apportionment complaint. The apportionment defendants maintain that compliance with the time limitation contained in § 52-102b (a) is mandatory and, therefore, because the defendants served the apportionment complaint more than

---

[7] As of the date the defendants filed their appeal, May 13, 2002, the trial court had not yet rendered judgment on the motion to dismiss filed by Murphy & Lieponis.

120 days after the return date of the original complaint, the trial courts properly dismissed the apportionment action. We agree with the apportionment defendants. We further conclude that § 52-102b (a) implicates personal jurisdiction, not subject matter jurisdiction.[8]

Resolution of this issue requires us to construe the relevant statutory provision, namely, § 52-102b (a). Thus, the question of whether the 120 day time limitation contained in § 52-102b (a) is mandatory presents a question of statutory interpretation over which our review is plenary. See *Waterbury* v. *Washington,* 260 Conn. 506, 546–47, 800 A.2d 1102 (2002).

"The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." Public Acts 2003, No. 03-154, § 1.[9] In the present case, Neurological Associates contends that § 52-102b clearly and unambiguously establishes that the 120 day time limitation is mandatory. Although we are persuaded after considering extratextual evidence that the 120 day time limitation is mandatory, we cannot conclude that the statute is clear and unambiguous on its face for two reasons. First, § 52-102b does not state explicitly that the time limitation is mandatory. Second, the inclusion of the phrase "if the apportionment com-

[8] All of the apportionment defendants claim in their briefs to this court that noncompliance with § 52-102b (a) raises an issue of subject matter jurisdiction. Neurosurgical Associates claims, as an alternate ground to affirm, that § 52-102b (a) implicates personal jurisdiction. We agree with Neurosurgical Associates' alternate ground.

[9] Public Act 03-154 was enacted in order to overrule our rejection of the plain meaning rule in *State* v. *Courchesne,* 262 Conn. 537, 577, 816 A.2d 562 (2003).

plaint is served within the time period" in § 52-102b (b) could be understood to mean that it is possible that the apportionment complaint could be served outside the 120 day period and nevertheless be viable. We therefore are not limited to the text of the statute in determining its meaning.

"The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words." (Internal quotation marks omitted.) *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 268, 777 A.2d 645 (2001).

We begin, as we always do, with the language of the relevant statute.[10] General Statutes § 52-102b (a) provides in relevant part: "A defendant in any civil action to which [General Statutes §] 52-572h applies *may serve a writ, summons and complaint* upon a person not a party to the action who is or may be liable pursuant to said section for a proportionate share of the plaintiff's damages in which case the demand for

---

[10] We note that there is a division of authority in the trial court decisions addressing this issue. See, e.g., *Mazzola* v. *Yaghma*, Superior Court, judicial district of New Haven, Docket No. 403943 (January 24, 2000) (holding that compliance with § 52-102b [a] is mandatory); *Ortiz* v. *Bridgeport Hospital*, Superior Court, judicial district of New London, Docket No. 547104 (February 24, 2000) (same); contra *Casey* v. *Allegheny Teledyne, Inc.*, Superior Court, judicial district of New London, Docket No. 0121238S (August 23, 2001) (120 day limitation of § 52-102b [a] is directory); *Ketchale* v. *Unger*, Superior Court, judicial district of New Haven, Docket No. 396218 (July 15, 1998) (same).

relief shall seek an apportionment of liability. Any such writ, summons and complaint, hereinafter called the apportionment complaint, *shall be served within one hundred twenty days of the return date* specified in the plaintiff's original complaint. . . ." (Emphasis added.)

The use of the word "shall" in § 52-102b (a) suggests that the legislature intended the 120 day time limitation to be a mandatory circumscription of the right to bring an apportionment claim. "As we have often stated, [d]efinitive words, such as must or shall, ordinarily express legislative mandates of a nondirectory nature." (Internal quotation marks omitted.) *Williams* v. *Commission on Human Rights & Opportunities*, supra, 257 Conn. 270–71. By contrast, "[t]he word 'may,' unless the context in which it is employed requires otherwise, ordinarily does not connote a command. Rather, the word generally imports permissive conduct and the conferral of discretion." *Commission on Human Rights & Opportunities* v. *Truelove & Maclean, Inc.*, 238 Conn. 337, 349, 680 A.2d 1261 (1996). Therefore, when the legislature opts to use the words "shall" and "may" in the same statute, they "must then be assumed to have been used with discrimination and a full awareness of the difference in their ordinary meanings." (Internal quotation marks omitted.) *Caulkins* v. *Petrillo*, 200 Conn. 713, 717, 513 A.2d 43 (1986). It is especially relevant that the legislature chose to use the word "shall" when referring to service of an apportionment complaint in contrast to the more permissive, "may," which is used with respect to the right to bring an apportionment claim. This distinction, which we assume to be deliberate, suggests that the legislature intended service of an apportionment complaint within the prescribed time period to be mandatory.

Our determination that § 52-102b (a) is mandatory is further informed by the text of subsection (f) of the statute, which strongly suggests that compliance with

the 120 day provision is mandatory. That subsection provides that "[t]his section *shall be the exclusive means* by which a defendant may add a person who is or may be liable pursuant to section 52-572h for a proportionate share of the plaintiff's damages as a party to the action." (Emphasis added.) General Statutes § 52-102b (f). The term "exclusive" is defined as "[a]ppertaining to the subject alone, not including, admitting, or pertaining to any others. Sole. Shutting out . . . ." Black's Law Dictionary (6th Ed. 1990). Indeed, we have stated that § 52-572h,[11] which establishes the right to apportion liability, "does not entitle a defendant to seek to apportion liability in instances in which the procedures outlined in § 52-102b are not followed." *Eskin* v. *Castiglia*, 253 Conn. 516, 530, 753 A.2d 927 (2000); *Allard* v. *Liberty Oil Equipment Co.*, 253 Conn. 787, 792–93, 756 A.2d 237 (2000). Thus, it is incontrovertible that, if a defendant seeks to apportion liability, he *must* comply with § 52-102b (a).

The linguistic evolution of § 52-102b, as illustrated by its legislative history, is also instructive. See, e.g., *Donahue* v. *Southington*, 259 Conn. 783, 790, 792 A.2d 76 (2002) (comparing original version of proposed bill to public act). Although Senate Bill No. 1012 (S.B. 1012) underwent several revisions before its ultimate passage as No. 95-111 of the 1995 Public Acts (P.A. 95-111), the precursor to § 52-102b, the legislative history reveals that, despite making other substantive changes, the legislature repeatedly opted for strong, compulsory language when referring to the time limitation for

---

[11] General Statutes § 52-572h (c) provides: "In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section."

commencing an apportionment action. At its inception, Raised Bill No. 1012, the precursor to substitute S.B. 1012, provided that, "no person shall be made a defendant for purposes of apportioning liability under section 52-572h unless service of process is made on such person *no later* than three years from the date the personal injury, wrongful death or damage to property occurred." (Emphasis added.) Raised Bill No. 1012, 1995 Sess. A subsequent draft proposed the following language: "Any such writ, summons and complaint, hereinafter called the apportionment complaint, *must* be served within one hundred twenty days of the return date in the plaintiff's original complaint." (Emphasis added.) Proposed Substitute S.B. 1012. Ultimately, as passed, P.A. 95-111 contained the language currently at issue: "Any such writ, summons and complaint, hereinafter called the apportionment complaint, *shall be served within one hundred twenty days of the return date . . . .*" (Emphasis added.) Thus, although the specific terms employed to refer to the 120 day period progressed from "no later than" to "must" to "shall," all of the words contemplated were compulsory in nature.

Despite the legislature's apparent intent to employ mandatory language, we are mindful that the word "shall" is not dispositive on the issue of whether a statute is mandatory. We have stated that "the use of the word shall, though significant, does not invariably [create] a mandatory duty." (Internal quotation marks omitted.) *State* v. *Pare*, 253 Conn. 611, 623, 755 A.2d 180 (2000). Thus, we must consider another factor, namely, whether the time limitation contained in § 52-102b (a) is procedural or substantive.

"A statute of limitations is generally considered to be procedural, especially where the statute contains only a limitation as to time with respect to a right of action and does not itself create the right of action."

(Internal quotation marks omitted.) *Ecker* v. *West Hart-ford*, 205 Conn. 219, 231–32, 530 A.2d 1056 (1987). "[W]here a statute gives a right of action which did not exist at common law, [however] and fixes the time within which the right must be enforced, the time fixed is a limitation or condition attached to the right—it is a limitation of the liability itself as created, and not of the remedy alone." (Internal quotation marks omitted.) *Diamond National Corp.* v. *Dwelle*, 164 Conn. 540, 543, 325 A.2d 259 (1973). "In such cases, the time limitation is not to be treated as an ordinary statute of limitation . . . . The courts of Connecticut have repeatedly held that, under such circumstances, the time limitation is a substantive and jurisdictional prerequisite . . . ." (Citations omitted.) *Ecker* v. *West Hartford*, supra, 232.

In order to determine whether the 120 day time limita-tion is substantive or procedural, therefore, we must first ascertain whether § 52-102b created a right that did not exist at common law. The facts essential to this query, which we answer in the affirmative, can be found in the legislative history of that statute. Before examin-ing the legislative history, however, we briefly summa-rize the development of the tort reform legislation that preceded the passage of § 52-102b, which highlights the genesis of the current statutory right to apportion lia-bility.

This court previously has addressed at length the evolution of Tort Reform I and II, in which the legisla-ture abolished the common-law rule of joint and several liability and replaced it with a system based on princi-ples of comparative fault. See, e.g., *Donner* v. *Kearse*, 234 Conn. 660, 666–69, 662 A.2d 1269 (1995). "Prior to October 1, 1986, this state adhered to the rules of joint and several liability with no contribution among joint tortfeasors. . . . [T]herefore, even a defendant whose degree of fault was comparatively small could be held responsible for the entire amount of damages . . . .

Partially in response to these concerns, the legislature undertook to reform the tort recovery provisions of our civil system . . . . Tort Reform I provided that each defendant would initially be liable for only that percentage of his negligence that proximately caused the injury, in relation to one hundred percent, that is attributable to each *person* whose negligent actions were a proximate cause of the damages." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 666–67. Subsequently, one year after Tort Reform I, the legislature enacted Tort Reform II, which "limited the universe [of negligent persons] to only those individuals who were parties to the legal action or who were specifically identified in § 52-572h (n)." Id., 668–69.

Tort Reform II, however, overlooked two significant details required to implement effectively the newly created fault apportionment system. Although § 52-572h created the right for a defendant to apportion liability to any party to the action, it did not include a means to invoke that right nor did it address the effect of the underlying statute of limitations on the apportionment claim. See Office of Legislative Research, Bill Analysis of S.B. 1012, pp. 7–8. Specifically, § 52-572h failed to provide for a means to make a nonparty a party to the action for the purpose of apportioning liability. As a member of the bar observed at a public hearing before the judiciary committee, "there exists a problem under Tort [Reform II] as to what do we do, when do we bring [parties] in . . . and what happens." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1995 Sess., p. 1752, remarks of Vincent DeAngelo, member of the executive committee of the Litigation Section of the Connecticut Bar Association. Another public hearing participant succinctly captured the practical ramifications of this omission: "[T]here are . . . problems . . . as a result of the abolition of joint and [several] liability. The first problem is that a lawyer may [bring]

suit in a timely fashion maybe three or four or five months after he gets the case and the defendant waits until two years and three months and then brings in third parties that the defendant has known about all along . . . ." Id., p. 1714, remarks of William Gallagher, representative of the Connecticut Trial Lawyers Association. The confusion spawned by the absence of a statutory method for apportioning liability prompted trial courts to invent varying methods, which often yielded inconsistent results.[12] See Office of Legislative Research, supra, p. 8.

To remedy these problems, the legislature adopted S.B. 1012, which was the "end result of a lengthy process of attempting to answer a question which arose because of the tort reform legislation passed several years ago." 38 H.R. Proc., Pt. 9, 1995 Sess., p. 3267, remarks of Representative Michael Lawlor; see also Conn. Joint Standing Committee Hearings, supra, p. 1736, remarks of Robert Shea, representative for the Insurance Association of Connecticut (bill intended to "address the apportionment issue, which members of the Bar and the Judges of the Superior Court agree is currently a problem"). Specifically, the bill had two purposes: "[T]o clarify the procedures by which courts order parties to appear in a case for purposes of apportionment . . . [and] to clarify [which] statute of limitations to impose . . . ." Report on Bills Favorably Reported by Committee, Judiciary (May 5, 1995) p. 1. Thus, it is apparent that the legislature intended § 52-102b to implement the right to apportionment that previously had been created in § 52-572h. Indeed, by its own terms, § 52-102b operates only in conjunction with § 52-572h and its primary application is to effectuate the right to apportion liability. See footnote 1 of this opinion.

---

[12] Some courts used General Statutes § 52-102 to permit nonparties to be brought into negligence actions for the purpose of apportioning liability. See Office of Legislative Research, supra, p. 8. Section 52-102 allowed a court, upon a motion, to make someone a party in any civil action if he has an interest that is contrary to the plaintiff's. Id.

This symbiotic relationship between §§ 52-102b and 52-572h leads us to conclude that, because § 52-102b was designed to clarify and make uniform the method of apportioning liability, it is intertwined inextricably with the broad right to apportionment created by the legislature in 1986, despite its placement in a different statutory section. We previously have determined that the system of comparative fault established by Tort Reform I and refined by Tort Reform II created rights that did not exist at common law. *Nash* v. *Yap*, 247 Conn. 638, 648, 726 A.2d 92 (1999). Accordingly, it is axiomatic that § 52-102b, which gave life to the right to apportionment provided in § 52-572h, also confers rights that did not exist at common law.

Having concluded that § 52-102b created rights that did not exist at common law, we further conclude that the statute's 120 day time limitation is a substantive limitation on the right to apportionment. As we already have stated, § 52-102b was designed to create an effective means of accomplishing apportionment with reasonable certainty. This was not possible prior to § 52-102b, which delineated the proper timing and method of service of an apportionment complaint. Although § 52-102b contains some procedural aspects, its substantive purpose and effect cannot be minimized. Section 52-102b gives tangible force to the right to apportionment created in § 52-572h. Conversely, failure to comply with its requirements prevents a defendant from exercising the right to apportion liability. Accordingly, on the basis of the mandatory language employed by the legislature and our conclusion that § 52-102b (a) is substantive, we further conclude that the 120 day time limitation contained therein is mandatory.

In support of their claim that the 120 day time limitation is directory, the defendants argue that the language of § 52-102b (a) plainly contemplates service beyond 120 days. According to the defendants, § 52-102b con-

tains no language indicating that the right to bring an apportionment action is lost if it is not brought within 120 days of the return date. To the contrary, they claim that subsection (b) expressly permits a defendant to seek to apportion liability more than 120 days after the return date on the underlying complaint. We disagree.

Section 52-102b (b) provides in relevant part: "The apportionment defendant shall have available to him all remedies available to an original defendant including the right to assert defenses, set-offs or counterclaims against any party. *If the apportionment complaint is served* within the time period specified in subsection (a) of this section, no statute of limitation or repose shall be a defense or bar to such claim for apportionment . . . ." (Emphasis added.) The defendants maintain that the phrase, "[i]f the apportionment complaint is served within the time period" denotes that service within the 120 day window is optional. Specifically, they read § 52-102b (b) to suggest that, if an apportionment action is *not* brought within 120 days, the action *will* be barred by the applicable statute of limitations, thereby implicitly sanctioning the filing of an apportionment action beyond 120 days. To this extent, the defendants claim that the apportionment complaint in the present case was timely served more than 120 days after the return date, but within the statute of limitations for a medical malpractice action.[13]

This reading takes the clause out of context and obviates the purposes of the statute. As we previously have discussed, one of the dual purposes of § 52-102b was to establish the relationship between the timeline for bringing an apportionment claim and the underlying statute of limitations. The defendants' reading posits a

---

[13] The statute of limitations for a medical malpractice action is two years from the date when the injury is first sustained or discovered. General Statutes § 52-584.

situation in which a defendant essentially elects which statute of limitation to employ, thereby allowing a defendant strategically to time the filing of an apportionment action so as to manipulate its effect to the detriment of potential third parties. For example, under the defendants' interpretation, a defendant would have two options: he could seek an apportionment of liability within 120 days of the return date of the complaint as provided by § 52-102b (a), or, following the expiration of the 120 day window period, he could file an apportionment action based on the underlying statute of limitations if it had not yet expired. This malleable approach is reminiscent of the confusion that precipitated the passage of P.A. 95-111 and is the very practice the legislature intended to suppress. Moreover, the defendants' interpretation would undermine the second purpose of the statute, which was to bring uniformity to the apportionment process. Injecting discretion into § 52-102b, as the defendants suggest, completely ignores the fact that it was enacted to ensure uniformity of result and process at the trial level.

The defendants also argue that § 52-102b (a) is merely procedural and, as such, should be considered directory. Specifically, the defendants argue that the right to bring a party into an action for apportionment of liability purposes was vested in § 52-572h by Tort Reform I in 1986 and, therefore, § 52-102b is merely a successor provision establishing the procedural mechanism by which to bring such an action. Thus, the defendants claim that § 52-102b (a) is a procedural device intended to "secure order and dispatch . . . ." We do not disagree that the right to seek apportionment of liability has existed in Connecticut since 1986. See, e.g., *Donner* v. *Kearse*, supra, 234 Conn. 666. Nor do we disagree that § 52-102b contains some procedural elements. Our disagreement, however, is with the defen-

dants' characterization of § 52-102b (a) as purely procedural.

This court previously has addressed a factually similar situation in *Diamond National Corp.* v. *Dwelle*, supra, 164 Conn. 540. In that case, the plaintiff appealed from the trial court's judgment of dismissal, in which the court held that it lacked jurisdiction over an action to enforce a mechanic's lien due to the expiration of the statutory time limit governing the validity of the lien. In affirming the trial court's judgment, this court stated: "[W]here a statute gives a right of action which did not exist at common law, and fixes the time within which the right must be enforced, the time fixed is a limitation or condition attached to the right . . . . Since [the relevant statute] sets the time within which the action must be commenced, it would appear that the statute conforms with the general rule and is thus a limitation on the right." (Citations omitted; internal quotation marks omitted.) *Diamond National Corp.* v. *Dwelle*, supra, 164 Conn. 543. This court then posited the following argument: "At this point it might be argued that because the lien was limited by [one statute] and was created by a different section . . . the general rule of construction stated above does not apply. This argument, however, is based on a misunderstanding of the general rule. . . . [T]he common case [for application of the general rule] is where a statute creates a new liability and in the same section or in the same act limits the time within which it can be enforced . . . . But the fact that the limitation is contained in the same section or the same statute is material only as bearing on construction. It is merely a ground for saying that the limitation goes to the right created and accompanies the obligation everywhere. *The same conclusion would be reached if the limitation was in a different statute, provided it was directed to the newly created liability so specifically as to warrant saying that it qualified*

*the right."* (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 544. Thus, in the present case, the fact that the 120 day provision of § 52-102b (a) is not located in the same section as the right to apportionment, which is contained in § 52-572h, is immaterial, especially in light of the close relationship between the two sections.

Finally, the defendants rely on our decision in *Katz* v. *Commissioner of Revenue Services*, 234 Conn. 614, 617, 662 A.2d 762 (1995), claiming that § 52-102b is analogous to General Statutes § 12-515,[14] which, in *Katz*, was held to be directory. We disagree. In *Katz*, the plaintiff claimed that § 12-515, which contains a provision requiring the commissioner of revenue services to act on a claim for a tax refund within ninety days, is mandatory. Id. After reviewing the language of the statute and the accompanying legislative history, we concluded that the ninety day requirement was not related to a matter of substance, but was merely an inducement to process refund claims in a timely manner. Id., 618. We are not persuaded that § 52-102b is analogous to § 12-515. As we already have stated, § 52-102b contains a substantive limitation on the right to bring an appor-

---

[14] General Statutes § 12-515 provides: "Any taxpayer who feels that he has overpaid any taxes due under this chapter may file a claim for refund in writing with the commissioner within three years from the due date for which such overpayment was made stating the specific grounds upon which the claim is founded. Not later than ninety days following receipt of such claim for refund the commissioner shall determine whether such claim is valid and if so, said commissioner shall notify the Comptroller of the amount of such refund and the Comptroller shall draw an order on the Treasurer in the amount thereof for payment to the taxpayer. To the amount of such refund there shall be added interest at the rate of three-fourths of one per cent for each month or fraction thereof which elapses between the ninetieth day following receipt of such claim for refund by the commissioner and the date of notice by the commissioner that such refund is due. Failure to file a claim within the time prescribed in this section constitutes a waiver of any demand against the state on account of overpayment. Within thirty days after disallowing any claim in whole or in part the commissioner shall serve notice of his action on the claimant."

tionment claim. It is the very essence of the statute and, therefore, cannot be characterized as an inducement.

Although we have concluded that § 52-102b (a) is mandatory, this does not end our inquiry. Rather, in order to resolve fully the issues presented in this appeal, we must consider the jurisdictional implications of our determination. Specifically, the contrasting legal arguments advanced by the apportionment defendants in the trial court require us to determine whether the mandatory 120 day time limitation implicates personal or subject matter jurisdiction.

We begin with a review of the distinctions between personal and subject matter jurisdiction. We previously have stated that "[j]urisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy." (Internal quotation marks omitted.) *Rayhall* v. *Akim Co.*, 263 Conn. 328, 339, 819 A.2d 803 (2003). A defect in process, however, such as an improperly executed writ, implicates personal jurisdiction, rather than subject matter jurisdiction. See *Brunswick* v. *Inland Wetlands Commission*, 222 Conn. 541, 551, 610 A.2d 1260 (1992). "[W]hen a particular method of serving process is set forth by statute, that method must be followed. . . . Unless service of process is made as the statute prescribes, the court to which it is returnable does not acquire jurisdiction. . . . The jurisdiction that is found lacking, however, is jurisdiction over the person, not the subject matter." (Citations omitted.) *Connor* v. *Statewide Grievance Committee*, 260 Conn. 435, 442, 797 A.2d 1081 (2002); *Commissioner of Transportation* v. *Kahn*, 262 Conn. 257, 272, 811 A.2d 693 (2003).

This court previously has disavowed the notion that mandatory language is per se subject matter jurisdic-

tional. In *Williams* v. *Commission on Human Rights & Opportunities*, supra, 257 Conn. 269–70, we stated that, "[a]lthough we acknowledge that mandatory language may be an indication that the legislature intended a time requirement to be jurisdictional, such language alone does not overcome the strong presumption of jurisdiction, nor does such language alone prove strong legislative intent to create a jurisdictional bar." We further stated that "[a] conclusion that a time limit is subject matter jurisdictional has very serious and final consequences. It means that, except in very rare circumstances . . . a subject matter jurisdictional defect may not be waived . . . may be raised at any time, even on appeal . . . and that subject matter jurisdiction, if lacking, may not be conferred by the parties, explicitly or implicitly." (Citations omitted.) Id., 266; see also Practice Book § 10-33 ("[a]ny claim of lack of jurisdiction over the subject matter cannot be waived"). A challenge to a court's personal jurisdiction, however, is waived if not raised by a motion to dismiss within thirty days of the filing of an appearance. *Pitchell* v. *Hartford*, 247 Conn. 422, 433, 722 A.2d 797 (1999) ("[t]he rule specifically and unambiguously provides that any claim of lack of jurisdiction over the person as a result of an insufficiency of service of process is waived unless it is raised by a motion to dismiss filed within thirty days [after the filing of an appearance] in the sequence required by Practice Book § 10-6"); see also Practice Book § 10-32 ("[a]ny claim of lack of jurisdiction over the person . . . is waived 'if not raised by a motion to dismiss"). "Therefore, we have stated many times that there is a presumption in favor of subject matter jurisdiction, and we require a strong showing of legislative intent that such a time limit is jurisdictional." *Williams* v. *Commission on Human Rights & Opportunities*, supra, 266.

We turn again to the language of § 52-102b, which, we conclude, is a service provision by its express terms. We have noted that the legislature frequently employs

the term "service" when dictating the necessary procedures by which a court may gain jurisdiction over a person. See *Commissioner of Transportation* v. *Kahn*, supra, 262 Conn. 273; see also General Statutes § 4-183 (c) ("person appealing as provided in this section shall serve a copy of the appeal on the agency that rendered the final decision"); General Statutes § 7-137c ("owner of any property so assessed may appeal to the superior court . . . by service of process made in accordance with the provisions of [General Statutes §] 52-67"). In the present case, § 52-102b is replete with references to service of process, through the use of the term "serve." For example, the statute provides in relevant part: "A defendant in any civil action to which section 52-572h applies may *serve* a writ . . . . Any such writ, summons and complaint, hereinafter called the apportionment complaint, shall be *served* within one hundred twenty days of the return date . . . . The defendant . . . shall *serve* a copy of such apportionment complaint on all parties to the original action . . . ." (Emphasis added.) General Statutes § 52-102b (a).

We also note that in addition to the language suggestive of service of process, § 52-102b ties the 120 day window to the return date, a device primarily concerned with matters related to service of process. See, e.g., *Coppola* v. *Coppola*, 243 Conn. 657, 661 n.8, 707 A.2d 281 (1998) ("the return date determines how to compute the time for service of process; General Statutes § 52-46; the time for filing the writ with the court; General Statutes § 52-46a; the time for the defendant to file an appearance with the court; General Statutes § 52-84; and the time for the defendant to respond to the complaint . . . Practice Book § 114 [now § 10-8]"). Therefore, because we conclude that § 52-102b is a service provision, we further determine that it implicates personal jurisdiction rather than subject matter jurisdiction.

Turning to the present case, we are mindful that the apportionment defendants, in their respective motions to dismiss, framed their jurisdictional challenges differently. Specifically, while both Neurosurgical Associates and Murphy & Lieponis pointed to untimely service of the apportionment complaint as the basis for their challenge, Neurosurgical Associates claimed a lack of personal jurisdiction[15] while Murphy & Lieponis asserted the absence of subject matter jurisdiction.[16] Despite the differences in nomenclature, the motions to dismiss, both of which were filed within thirty days of service of the apportionment complaint, relied on late service as the underlying basis for dismissal. We therefore see no reason to distinguish among the apportionment defendants, and, accordingly, conclude that both motions to dismiss properly were granted.

This court repeatedly has eschewed applying the law in such a hypertechnical manner so as to elevate form over substance. See, e.g., *Stepney Pond Estates, Ltd.* v. *Monroe*, 260 Conn. 406, 422, 797 A.2d 494 (2002) ("[t]o conclude . . . that the fact that the plaintiff invoked [a statute] instead of bringing a common-law action in equity deprived the trial court of jurisdiction would be to exalt form over substance"); *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, 256 Conn. 674, 729–30, 780 A.2d 1 (2001) (requiring planning and zoning commission to state expressly that its reasons for rejecting applications clearly outweighed need for affordable housing in order to satisfy public interests standard of subparagraph [C] of then General Statutes

---

[15] In its motion to dismiss, Neurosurgical Associates claimed a lack of personal jurisdiction, arguing that the court "lacks jurisdiction over these Apportionment Defendants because the Apportionment Complaint is not in compliance with the requirements of . . . § 52-102b (a)."

[16] Murphy & Lieponis, in its motion to dismiss, claimed that the trial court *"lacks subject matter jurisdiction* over the apportionment complaint" because the defendant served it with the apportionment complaint more than 120 days after the return date on the original complaint. (Emphasis added.)

§ 8-30g [c] [1] would have elevated form over substance); *State* v. *Eady*, 249 Conn. 431, 450, 733 A.2d 112 (1999) ("suppression of [evidence observed in plain view by fireman lawfully on premises] would elevate form over substance and would undermine three decades of state and federal precedent that has sought to infuse logic and common sense into the exclusionary rule"), cert. denied, 528 U.S. 1030, 120 S. Ct. 551, 145 L. Ed. 2d 428 (1999). Moreover, "[t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically." (Internal quotation marks omitted.) *Beaudoin* v. *Town Oil Co.*, 207 Conn. 575, 587–88, 542 A.2d 1124 (1988). Thus, we agree with the United States Court of Appeals for the Second Circuit that "to preserve the defense of lack of personal jurisdiction, a defendant . . . need not articulate the defense with any rigorous degree of specificity." *Mattel, Inc.* v. *Barbie-Club.Com*, 310 F.3d 293, 307 (2d Cir. 2002).

## II

The defendants' second, and final, claim is that the trial courts improperly granted the apportionment defendants' motions to dismiss because the apportionment complaint was timely filed within the ninety day extension granted by the trial court. The apportionment defendants maintain, however, that because § 52-102b (a) is mandatory, the trial court lacked the authority to extend the time for commencing an apportionment action. We agree with the apportionment defendants.

As we stated in part I of this opinion, our review of a question of statutory interpretation is plenary. See *Waterbury* v. *Washington*, supra, 260 Conn. 546–47.

The defendants' argument falters on two grounds. First, we already have concluded that compliance with § 52-102b (a) is mandatory. "[M]andatory time limitations must be complied with absent an equitable reason

for excusing compliance, including waiver or consent by the parties." *Williams* v. *Commission on Human Rights & Opportunities*, supra, 257 Conn. 270. The facts of this appeal present no evidence of waiver or consent.[17]

Second, § 52-190a, the statute on which the defendants premised their request for an extension of time, does not apply to apportionment claims under § 52-102b by virtue of the express wording of the statute. Section 52-190a (a) provides in relevant part that "[n]o civil action shall be filed *to recover damages* resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. . . ." (Emphasis added.) By its own terms, § 52-190a (a) applies only to those actions in which a party seeks "to recover damages . . . ." Pursuant to § 52-102b (a), the demand for relief in an apportionment complaint seeks only an "apportionment of liability." "Liability" refers to a legal obligation or responsibility; Black's Law Dictionary (6th Ed. 1990); whereas "damages" refers to "monetary compensation" for loss or injury. Id. The terms are not synonymous. Accordingly, § 52-190a, which applies only to civil actions "to recover damages," does not apply to apportionment complaints, which seek only an apportionment of liability.

The concurring and dissenting opinion concludes that § 52-190a applies to apportionment claims brought

---

[17] We are mindful that the ninety day extension granted by the trial court was uncontested. The lack of an objection, however, cannot operate as a waiver in this case because the apportionment defendants were not yet parties to the action and therefore had no notice that the extension was requested.

under § 52-102b. That conclusion, however, runs afoul of several requirements for statutory construction. Public Act 03-154, § 1, provides in relevant part: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statutes itself and its relationship to other statutes. . . ." The language of § 52-190a limits its applicability to civil actions in which a party seeks to recover damages. The analysis in the concurring and dissenting opinion fails to give the greatest weight to the language of the statute as it was adopted by the legislature.

That analysis also contravenes a well established rule of statutory construction by reading the words "to recover damages" out of § 52-190a. "We ordinarily do not read statutes so as to render parts of them superfluous or meaningless." (Internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 135, 836 A.2d 224 (2003). In concluding that § 52-190a applies to apportionment complaints, the concurring and dissenting opinion renders the phrase "to recover damages" meaningless.

The concurring and dissenting opinion disagrees with what it deems our narrow and literal reading of the statutes and maintains that §§ 52-102b and 52-190a, when read broadly, are in fact compatible. Both statutes, however, were drafted as part of, or in response to, tort reform and are therefore in derogation of the common law. See *Nash* v. *Yap*, supra, 247 Conn. 648. It is axiomatic that "statutes in derogation of common law should receive a strict construction and [should not] be extended, modified, repealed or enlarged in [their] scope by the mechanics of construction." (Internal quotation marks omitted.) *Bhinder* v. *Sun Co.*, 246 Conn. 223, 231, 717 A.2d 202 (1998). The concurrence and dissent's broad reading of both these statutes violates this well recognized principle of statutory construction.

Our conclusion that §§ 52-102b and 52-190a are incompatible is buttressed by the fact that the legislature adopted the apportionment complaint provisions of § 52-102b in 1995, nine years after the certificate of good faith requirement in § 52-190a had been established by Tort Reform I. Had the legislature intended the requirements of § 52-190a to apply to actions seeking an apportionment of liability, it could have mirrored the language of § 52-190a when drafting § 52-102b. The legislature, however, did not to do so. Instead, § 52-102b contains language that is wholly inconsistent with § 52-190a.

The concurring and dissenting opinion further states that harmonizing §§ 52-102b and 52-190a would effectuate the underlying policies of § 52-190a, which include controlling medical malpractice insurance rates. We think that conclusion is speculative at best because we do not know whether medical malpractice insurance carriers provide a defense for apportionment claims, which cannot result in a judgment for damages, and, if they do provide a defense, whether doing so without risking a judgment for damages causes an increase in malpractice insurance rates.

For all of the foregoing reasons, we conclude that the ninety day extension granted by the trial court did not extend the mandatory service period set forth in § 52-102b (a).

The judgments are affirmed.

In this the opinion SULLIVAN, C. J., and ZARELLA, J., concurred.

BORDEN, J., with whom KATZ, J., joins, concurring and dissenting. I agree with the well reasoned analysis

in part I of the majority opinion, in which the court holds that General Statutes § 52-102b (a),[1] which requires service of an apportionment complaint within 120 days after the return date of the original complaint,

---

[1] General Statutes § 52-102b provides: "(a) A defendant in any civil action to which section 52-572h applies may serve a writ, summons and complaint upon a person not a party to the action who is or may be liable pursuant to said section for a proportionate share of the plaintiff's damages in which case the demand for relief shall seek an apportionment of liability. Any such writ, summons and complaint, hereinafter called the apportionment complaint, shall be served within one hundred twenty days of the return date specified in the plaintiff's original complaint. The defendant filing an apportionment complaint shall serve a copy of such apportionment complaint on all parties to the original action in accordance with the rules of practice of the Superior Court on or before the return date specified in the apportionment complaint. The person upon whom the apportionment complaint is served, hereinafter called the apportionment defendant, shall be a party for all purposes, including all purposes under section 52-572h.

"(b) The apportionment complaint shall be equivalent in all respects to an original writ, summons and complaint, except that it shall include the docket number assigned to the original action and no new entry fee shall be imposed. The apportionment defendant shall have available to him all remedies available to an original defendant including the right to assert defenses, set-offs or counterclaims against any party. If the apportionment complaint is served within the time period specified in subsection (a) of this section, no statute of limitation or repose shall be a defense or bar to such claim for apportionment, except that, if the action against the defendant who instituted the apportionment complaint pursuant to subsection (a) of this section is subject to such a defense or bar, the apportionment defendant may plead such a defense or bar to any claim brought by the plaintiff directly against the apportionment defendant pursuant to subsection (d) of this section.

"(c) No person who is immune from liability shall be made an apportionment defendant nor shall such person's liability be considered for apportionment purposes pursuant to section 52-572h. If a defendant claims that the negligence of any person, who was not made a party to the action, was a proximate cause of the plaintiff's injuries or damage and the plaintiff has previously settled or released the plaintiff's claims against such person, then a defendant may cause such person's liability to be apportioned by filing a notice specifically identifying such person by name and last known address and the fact that the plaintiff's claims against such person have been settled or released. Such notice shall also set forth the factual basis of the defendant's claim that the negligence of such person was a proximate cause of the plaintiff's injuries or damages. No such notice shall be required if such person with whom the plaintiff settled or whom the plaintiff released was previously a party to the action.

"(d) Notwithstanding any applicable statute of limitation or repose, the plaintiff may, within sixty days of the return date of the apportionment

is mandatory, and that § 52-102b (a) involves personal, rather than subject matter, jurisdiction. Furthermore, I agree with the majority that, under the facts of this case, no distinction is warranted in this respect between apportionment defendants Neurosurgical Associates of Connecticut, P.C., and Murphy and Lieponis, P.C. I disagree, however, with the majority's conclusion that the trial courts properly granted their motions to dismiss.

I also disagree with the conclusion reached in part II of the majority opinion that General Statutes § 52-190a,[2] which requires a good faith investigation and

complaint served pursuant to subsection (a) of this section, assert any claim against the apportionment defendant arising out of the transaction or occurrence that is the subject matter of the original complaint.

"(e) When a counterclaim is asserted against a plaintiff, he may cause a person not a party to the action to be brought in as an apportionment defendant under circumstances which under this section would entitle a defendant to do so.

"(f) This section shall be the exclusive means by which a defendant may add a person who is or may be liable pursuant to section 52-572h for a proportionate share of the plaintiff's damages as a party to the action.

"(g) In no event shall any proportionate share of negligence determined pursuant to subsection (f) of section 52-572h attributable to an apportionment defendant against whom the plaintiff did not assert a claim be reallocated under subsection (g) of said section. Such proportionate share of negligence shall, however, be included in or added to the combined negligence of the person or persons against whom the plaintiff seeks recovery, including persons with whom the plaintiff settled or whom the plaintiff released under subsection (n) of section 52-572h, when comparing any negligence of the plaintiff to other parties and persons under subsection (b) of said section."

[2] General Statutes § 52-190a provides: "(a) No civil action shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint or initial pleading shall contain a certificate, on a form prescribed by the rules of the superior court, of the attorney or party filing the action that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant. For purposes of this section, such good faith may be

certificate of good faith before bringing a medical mal-
practice action, does not apply to apportionment com-
plaints under § 52-102b. I would conclude, to the
contrary, that § 52-190a does apply to apportionment
complaints brought under § 52-102b. I would also con-
clude that, under the facts of the present case, the
trial court's granting of the defendants' motion for an
extension of time of an additional ninety days to file
an apportionment complaint was sufficient to relieve
the defendants of the consequences of the mandatory
120 day time limit imposed by § 52-102b. I would, there-
fore, reverse the judgments of the trial courts.

This case involves the intersection of two separate
but closely related statutes that grew out of the legisla-
tive program known as Tort Reform. Section 52-190a
was enacted in 1986 by § 12 of No. 86-338 of the 1986
Public Acts, which is known as Tort Reform I. See
*Donner* v. *Kearse*, 234 Conn. 660, 667, 662 A.2d 1269
(1995). A central part of Tort Reform I was the abolition

shown to exist if the claimant or his attorney has received a written opinion,
which shall not be subject to discovery by any party except for questioning
the validity of the certificate, of a similar health care provider as defined
in section 52-184c, which similar health care provider shall be selected
pursuant to the provisions of said section, that there appears to be evidence
of medical negligence. In addition to such written opinion, the court may
consider other factors with regard to the existence of good faith. If the
court determines after the completion of discovery, that such certificate
was not made in good faith and that no justiciable issue was presented
against a health care provider that fully cooperated in providing informal
discovery, the court upon motion or upon its own initiative, shall impose
upon the person who signed such certificate, a represented party or both,
an appropriate sanction, which may include an order to pay to the other
party or parties the amount of the reasonable expenses incurred because
of the filing of the pleading, motion or other paper, including a reasonable
attorney's fee. The court may also submit the matter to the appropriate
authority for disciplinary review of the attorney if the claimant's attorney
submitted the certificate.

"(b) Upon petition to the clerk of the court where the action will be filed,
an automatic ninety-day extension of the statute of limitations shall be
granted to allow the reasonable inquiry required by subsection (a) of this
section. This period shall be in addition to other tolling periods."

of joint and several liability, and the substitution of proportional liability among different potential tortfeasors. Id., 667–68. Section 52-102b was enacted in 1995 by No. 95-111 of the 1995 Public Acts, in order to address questions that had become apparent regarding how, procedurally, to implement the concept of proportional liability where the plaintiff in a tort action had not brought an action against all the potential tortfeasors and the original defendant sought to apportion liability and, therefore, damages, among those other potential tortfeasors. This case raises the question of how these two statutes should be interpreted where the other potential tortfeasors are health care providers.

In general terms, § 52-190a (a) requires that a party may not bring an action to recover damages from a health care provider based on a claim of malpractice without (1) a reasonable inquiry leading to a good faith belief that there was malpractice, and (2) a certificate filed by the party's attorney that such an inquiry gave rise to such a belief. Under subsection (b) of § 52-190a, the party may petition the clerk of the court for an automatic ninety day extension of the statute of limitations in order to make the reasonable inquiry required by subsection (a).

In similarly general terms, § 52-102b provides that, if a defendant in a tort action believes that another person is or may be liable for a proportionate share of the plaintiff's damages, the defendant may serve an apportionment writ, summons and complaint on that other person and seek the relief of an apportionment of liability. This apportionment complaint must be filed within 120 days of the return day of the underlying tort complaint.

With this general background in mind, I first briefly recap the facts and procedures of this case. With a return date of June 19, 2001, the plaintiff, Stephen Los-

tritto, commenced the underlying negligence action against the defendants, Community Action Agency of New Haven, Inc. (Community Action), and Elizabeth Barrett, for damages arising out of a motor vehicle accident. Community Action and Barrett sought to apportion liability to the plaintiff's health care providers, namely, Neurosurgical Associates of Connecticut, P.C., and its physician employee, Harry P. Engel (collectively, Neurosurgical Associates), and Murphy and Lieponis, P.C., and its physician employee, Jonas Lieponis (collectively, Murphy & Lieponis), based on their apparent belief that some portion of the plaintiff's damages had been proximately caused by the medical malpractice of Neurosurgical Associates and Murphy & Lieponis. Therefore, on October 12, 2001, Community Action and Barrett moved, pursuant to § 52-190a (b); see footnote 2 of this opinion; for a ninety day extension of the 120 day time limit provided for by § 52-190a (a); see id.; claiming that, because the apportionment complaint that they intended to file would allege medical malpractice, they needed additional time to conduct the reasonable inquiry required by § 52-190a (a) to form a good faith belief that there was, in fact, medical malpractice and, therefore, to obtain the necessary good faith certificate.[3] On October 15, 2001, the trial court granted the ninety day extension to January 19, 2002, and thereafter Community Action and Barrett served Neurosurgical Associates and Murphy & Lieponis, on January 14, 2002, and January 17, 2002, respectively, with an apportionment complaint, accompanied by the

---

[3] It is true, of course, that Community Action and Barrett did not strictly comply with § 52-190a (b), because they moved *the court* for the additional ninety days, rather than, as subsection (b) provides, simply petitioning *the clerk* for an "automatic ninety-day extension of the statute of limitations" that, the statute also provides, "shall be granted to allow the reasonable inquiry required by subsection (a) of this section." It would be bizarre to conclude, however, and neither Neurosurgical Associates nor Murphy & Lieponis contends, that the court did not have the power to grant what the statute commands the clerk to grant.

good faith certificate required by § 52-190a (a).[4] Neither Neurosurgical Associates nor Murphy & Lieponis dispute that they were served within the ninety day extension granted by the court.[5] Thus, in summary, within 120 days of the underlying negligence complaint, Community Action and Barrett moved the court for the additional ninety days provided for by § 52-190a (b), and served both Neurosurgical Associates and Murphy & Lieponis within the ninety day extension granted by the court.

The majority concludes, however, that the trial courts properly granted the motions to dismiss filed by Neurosurgical Associates and Murphy & Lieponis, for two reasons. First, the 120 day time limit imposed by § 52-102b (a) for filing is mandatory, and on the facts of this case, there is no equitable basis for excusing compliance with it. Second, the ninety day extension granted by the court was ineffectual. In this latter regard, the majority reasons that § 52-190a, which requires a reasonable inquiry and good faith certificate before bringing a medical malpractice action, does not apply to apportionment complaints because such a complaint is not an action "to recover damages" within the meaning of § 52-190a (a); it is, instead, an action for "apportionment of liability" within the meaning of § 52-102b (a).

This conclusion is a classic example of the adage, "No good deed goes unpunished." Under the majority's

---

[4] In their apportionment complaint, Community Action and Barrett alleged that Neurosurgical Associates and Murphy & Lieponis had committed the following acts of medical malpractice: failure to evaluate the plaintiff's progressive neurological deterioration; failure to diagnose the plaintiff's condition; failure to treat the plaintiff properly; failure to use appropriate preoperative and intraoperative preparations; and failure to employ proper surgical techniques and instruments.

[5] Murphy & Lieponis, in its brief to this court, specifically "acknowledges that the apportionment complaint was served before the expiration of that [ninety] day period" granted by the court, and Neurosurgical Associates makes no claim in this court that it was not served within the ninety day period.

reasoning that § 52-102b does not encompass a medical malpractice action under § 52-190a (a), Community Action and Barrett, believing that the malpractice of the plaintiff's health providers may have contributed to his damages, should not have—as they did—made a reasonable inquiry before alleging medical malpractice, should not have—as they did—sought additional time from the court for that purpose, and should not have— as they did—filed a good faith certificate supporting their claims of medical malpractice. Instead, they simply should have filed an apportionment complaint against Neurosurgical Associates and Murphy & Lieponis, within the 120 days required by § 52-102b (a), *without* making any reasonable inquiry regarding whether there was such malpractice, *without* seeking to obtain a good faith certificate for a belief that there was such malpractice, and *without* seeking the court's permission for an additional ninety day extension in order to make that inquiry and obtain that certificate. Had they done so, under the majority's reasoning, they would have been "home free" with respect to their apportionment complaint—they could have made the serious allegations of medical malpractice that they ultimately made; see footnote 4 of this opinion; without any reasonable inquiry leading to a good faith belief in the truth of those allegations. Thus, the majority's conclusion puts in place a perverse set of incentives: if a tort defendant seeks to apportion liability to a health care provider pursuant to § 52-102b, he should do so by *not* complying with the reasonable inquiry and good faith certificate requirements of § 52-190a; he should allege first, and investigate later. I do not think that the legislature, in enacting these two separate but closely related statutory provisions, intended such an irrational and bizarre result.[6]

[6] I note that, in rejecting my statutory analysis, the majority, when relying on No. 03-154 of the 2003 Public Acts (P.A. 03-154), relies only on the first sentence of that act, which provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its

Instead, I think that we should interpret these provisions so that they form a coherent and rational, rather than an inconsistent and irrational, statutory scheme; *Waterbury* v. *Washington*, 260 Conn. 506, 557, 800 A.2d 1102 (2002); so that they make sense when read together; *Interlude, Inc.* v. *Skurat*, 266 Conn. 130, 143–44, 831 A.2d 235 (2003); and so that they carry out the closely related purposes of both, consistent with the limitations of their language; *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 310–11, 819 A.2d 260 (2003). That is because we presume that the legislature intended sensible and rational results from the legislation that it has enacted. *Interlude, Inc.* v. *Skurat*, 253 Conn. 531, 539, 754 A.2d 153 (2000). Under that interpretation, when a defendant files an apportionment complaint pursuant to § 52-102b against a health care provider, the apportionment complaint is subject to the provisions of § 52-190a.

I begin my analysis with an examination of the history and purposes of § 52-190a, which requires that, before

relationship to other statutes." I perceive no inconsistency between that sentence and this court's decision in *State* v. *Courchesne*, 262 Conn. 537, 577, 816 A.2d 562 (2003), in which this court held that, in performing the judicial task of statutory interpretation, we always begin with the text of the statute and that the text is the most important factor involved in that process. Thus, the majority states only that I have given insufficient weight to that text. My response is that the majority has given too much weight to the narrow reading of the text of § 52-190a, and too little weight to the purposes of that statute and its relationship with other tort related statutes.

The majority does not, however, rely on the second sentence of P.A. 03-154, which provides: "If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." It is clear to me that, when reading §§ 52-102b and 52-190a *together*, as P.A. 03-154 requires (meaning of statute in first instance to "be ascertained from the text of the statute itself *and its relationship to other statutes*" [emphasis added]), § 52-190a is not plain and unambiguous, and that precluding its applicability to an apportionment complaint will "yield [an] absurd or unworkable [result] . . . ." P.A. 03-154. Therefore, I conclude that a proper application of the process of statutory interpretation in this instance is not constrained by P.A. 03-154.

allegations of medical malpractice are made, there must be a reasonable inquiry leading to a good faith belief and certificate that the allegations are in fact true. As I indicated previously, this provision was enacted in 1986 as part of Tort Reform I. It is apparent, from both its language and its legislative history,[7] that it has several intertwined purposes. Those purposes include: (1) to put some measure of control on what was perceived as a crisis in medical malpractice insurance rates; (2) to discourage frivolous or baseless medical malpractice actions; (3) to reduce the incentive to health care providers to practice unnecessary and costly defensive medicine because of the fear of such actions; (4) to reduce the emotional, reputational and professional toll imposed on health care providers who are made the targets of baseless medical malpractice actions; and (5) the replacement of proportional liability for the preexisting system of joint and several liability as a central part of Tort Reform I, so as to remove the health care provider as an unduly attractive deep pocket for the collection of all of the plaintiff's damages. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1986 Sess., pp. 212–26, 268–83, 320–21; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 6, 1986 Sess., pp. 1968–93; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 7, 1986 Sess., pp. 2319–27; Insurance and Real Estate Committee Report on Health Care Liability Insurance in Compliance with Special Act 85-85, concerning Substitute House Bill No. 5110, entitled "An Act Establishing a Task Force on Health Care Liability Insurance." Thus, of particular importance for the

---

[7] The particular legislative history to which I refer includes the committee hearings on the bills that eventually became Tort Reform I. We have long recognized testimony in committee hearings as relevant to the meaning of legislative language, because it indicates the problems that the legislature was attempting to resolve in enacting the legislation. See *Burke* v. *Fleet National Bank*, 252 Conn. 1, 17, 742 A.2d 293 (1999); *Toise* v. *Rowe*, 243 Conn. 623, 630, 707 A.2d 25 (1998).

present case, the proponents of that part of Tort Reform I that resulted in § 52-190a considered apportionment of liability as an important part of its rationale. Section 3 (c) of Public Act 86-338 enacted the system of proportional liability, and is now codified at General Statutes § 52-572h (c).[8]

By 1995, however, it had become apparent that there were unanticipated procedural difficulties in implementing the system of proportional liability, particularly where the plaintiff had not brought an action against another potential tortfeasor whom the original defendant believed should share in the proportional liability. As the majority opinion aptly states, the legislature therefore enacted § 52-102b to implement the right to apportionment previously created by § 52-572h by clarifying the procedures by which other potential tortfeasors could be made parties for purposes of apportionment. It is significant, moreover, that, to the extent that, as the majority also aptly states, there is a "symbiotic relationship between §§ 52-102b and 52-572h," there is also an intimate relationship between §§ 52-102b and 52-190a, because part of the essential rationale for § 52-190a was the right to apportionment created by § 52-102b. Put another way, § 52-190a, as a legislative solution to the medical malpractice crisis, was premised in part on the associated enactment of proportional liability as a means of reducing the attractiveness of the medical profession's deep pockets. Thus, in my view, §§ 52-102b and 52-190a should be read together, so as to form a rational and coherent whole.

---

[8] General Statutes § 52-572h (c) provides: "In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section."

With this background in mind, I now turn to the specific provisions of §§ 52-190a (a) and 52-102b (a), and I begin, as I must, with their language. I acknowledge that certain of the language of § 52-190a (a), namely, "[n]o civil action shall be filed *to recover damages*"; (emphasis added); if read narrowly and literally, would not apply to an apportionment complaint filed under § 52-102b (a) because certain of that statute's language, namely, "the demand for relief shall seek *an apportionment of liability*"; (emphasis added); if also read narrowly and literally, would not be within the meaning of § 52-190a (a) as an action "to recover damages . . . ." This is essentially the reasoning employed by the majority.[9] I would, however, read both statutes more broadly so as to effectuate their purposes and so that, taken together, they constitute a rational and coherent scheme applicable to the case in which the apportionment complaint is filed against a health care provider.

There is no question that a defendant who seeks to apportion liability to a potential tortfeasor who happens

[9] This narrow reading places a heavy burden on the legislature when drafting a statute, and ignores the rule of statutory construction that requires this court to interpret statutes so as to create one harmonious body of law. *Interlude, Inc.* v. *Skurat*, supra, 266 Conn. 143. For instance, General Statutes § 52-584 provides in relevant part: "No action to recover damages . . . caused by negligence . . . shall be brought but within two years . . . ." Read narrowly and literally, that language suggests that "no action" may ever exceed that two year limitation period. In addition, § 52-584 makes no reference to § 52-190a, and does not contain limiting language such as "except as otherwise provided." Yet, § 52-190a (b) expressly permits parties to extend the limitation period by ninety days in order to obtain a certificate of good faith. It would be untenable to argue that the legislature's failure to provide excepting language in § 52-584 would somehow render § 52-190a inapplicable to § 52-584. The majority concludes, however, that the legislature's use of the phrase " 'apportionment of liability,' " as opposed to, say, "apportionment of damages" or "apportionment of liability and damages," either of which the legislature plainly meant, somehow removes outright § 52-102b from the statutory scheme governing negligence actions seeking damages.

to be a medical provider must do so by filing an apportionment complaint pursuant to § 52-102b. The linguistic disconnect between the two statutes in such a case arises because § 52-102b was enacted nine years after § 52-190a, and it is clear that, in 1995, the legislature was focusing only on the paradigmatic case of a defendant who seeks to apportion liability to another potential tortfeasor, and did not focus on the question of apportionment when that other potential tortfeasor is a medical provider. The question, then, becomes in my view whether § 52-102b can appropriately be interpreted broadly enough so as to be consistent with the language of and accomplish the purposes of § 52-190a. In other words, can § 52-102b be interpreted so as appropriately to constitute an action "to recover damages" within the meaning of § 52-190a (a)? I think that it can and should be so interpreted.

I turn, therefore, first to the language of § 52-102b, and I conclude that the language used is broad enough so as to be appropriately interpreted to carry out the purposes of § 52-190a. Although § 52-102b (a) refers, as the prayer for relief of such a complaint, to "an apportionment of liability," its predicate is that the complaint be served "upon a person not a party to the action who is or may be liable . . . for a *proportionate share of the plaintiff's damages* . . . ." (Emphasis added.) Thus, functionally, apportionment of liability and apportionment of damages go hand in hand. Indeed, that is made explicit by § 52-102b (f), which provides: "This section shall be the exclusive means by which a defendant may add a person who is or may be liable *pursuant to section 52-572h* for a proportionate share *of the plaintiff's damages* as a party to the action." (Emphasis added.) We must turn, therefore, to § 52-572h (c) and (d),[10] which provide, in a case involving apportionment,

[10] General Statutes § 52-572h provides in relevant part: "(c) In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages

the method by which to calculate each party's "proportionate share of the recoverable *economic damages* and the recoverable *noneconomic damages*"; (emphasis added) General Statutes § 52-572h (c); and "[t]he *proportionate share of damages* for which each party is liable . . . ." (Emphasis added.) General Statutes § 52-572h (d).

Second, subsection (b) of § 52-102b provides in relevant part: "The apportionment complaint shall be equivalent in all respects to an original writ, summons and complaint, except that it shall include the docket number assigned to the original action and no new entry fee shall be imposed. . . ." This language supports the notion that § 52-102b ought to be read in conjunction with § 52-190a. Indeed, the phrase "equivalent in all respects to an original writ, summons and complaint," strongly suggests that a defendant seeking to implead a third party under § 52-102b (b) must comply with the same procedures as a plaintiff serving the original complaint under §§ 52-572h and 52-190a. In any action to recover damages from a health care provider, the "complaint or initial pleading shall contain a certificate" of good faith. General Statutes § 52-190a (a). Thus, if

are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section.

"(d) The proportionate share of damages for which each party is liable is calculated by multiplying the recoverable economic damages and the recoverable noneconomic damages by a fraction in which the numerator is the party's percentage of negligence, which percentage shall be determined pursuant to subsection (f) of this section, and the denominator is the total of the percentages of negligence, which percentages shall be determined pursuant to subsection (f) of this section, to be attributable to all parties whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section. Any percentage of negligence attributable to the claimant shall not be included in the denominator of the fraction. . . ."

an initial complaint against a health care provider must be accompanied by a certificate of good faith, and an "apportionment complaint shall be equivalent in *all* respects to an original writ, summons and complaint"; (emphasis added) General Statutes § 52-102b (b); then an apportionment complaint against a health care provider, even if read literally, must be accompanied by a certificate of good faith.

In addition, the language of § 52-102b is certainly capacious enough to encompass a meaning consistent with an action "to recover damages" contained in § 52-190a (a), because an original writ against the health care provider would certainly be viewed as a claim for recovery of money damages. This conclusion is buttressed by the reference to § 52-572h in the first sentence of § 52-102b (a): "A defendant in any civil action to which section 52-572h applies . . . ." This reference to § 52-572h runs counter to the majority's attenuated distinction between the phrases an action "to recover damages" and "apportionment of liability," because the scope and tenor of § 52-572h applies to *actions to recover damages*. Indeed, § 52-572h is replete with references to the word "damages." Section 52-572h (a) defines " '[e]conomic damages,' " " 'noneconomic damages,' " " 'recoverable economic damages,' " and " 'recoverable noneconomic damages.' " The remainder of the statute then goes on to discuss damages in varying scenarios. Thus, if the procedures for filing an apportionment complaint under § 52-102b are applicable only to actions governed by § 52-572h, and if the remedies available under § 52-572h focus solely on "damages," then it seems to me that the legislature contemplated apportionment complaints to not only apportion liability, but also to shift *damages*. Any other conclusion elevates form over substance.[11]

[11] Indeed, the language "the demand for relief shall seek an apportionment of liability" in § 52-102b (a) would serve the same purpose if the legislature had written "the demand for relief shall seek an apportionment of *damages*."

Along these same lines, it is undisputed that the relevant limitation period for negligence actions is contained in General Statutes § 52-584, which provides in relevant part: *"No action to recover damages . . . caused by negligence . . . shall be brought but within two years . . . ."* (Emphasis added.) Section 52-102b (b) permits an apportionment defendant to use that limitation period as a defense if the defendant who served the apportionment complaint could have done so. Thus, if § 52-102b (b) permits an apportionment defendant to use § 52-584 as a defense, and § 52-584, by its very language, *is only a defense to actions seeking to recover damages,* then an apportionment complaint filed pursuant to § 52-102b ought to be regarded as the functional equivalent of an action "to recover damages . . . ." General Statutes § 52-190a (a). Put another way, the majority gives an apportionment defendant the best of both worlds: it permits an apportionment defendant to use a defense that is reserved only for actions seeking to recover damages; while at the same time it allows an apportionment defendant to avoid the requirements of § 52-190a because, in the majority's view, it is not an action to recover damages. This is further evidence that, when the apportionment defendant is a health care provider, the legislature intended an apportionment complaint to include the good faith investigation and certificate requirements of § 52-190a.

I conclude, therefore, that the language in § 52-102b (a) on which the majority so heavily relies, namely, an action "to recover damages," does not exclude an apportionment complaint against a health care provider. Read in context, and together with §§ 52-102b (b) and (f), and 52-572h (d), subsection (a) of § 52-102b is broad enough to mean, and was intended to mean,

---

I see no persuasive reason for the majority's unduly narrow reading of that language in the present case.

an action to apportion damages against a health care provider so as to trigger the requirement of § 52-190a.

Finally, in my view, most, if not all, of the purposes of § 52-190a (a) would be served by considering an apportionment complaint against a health care provider as coming within the strictures of § 52-190a, and a contrary conclusion would be wholly inconsistent with those purposes. As I have indicated previously, those purposes are: (1) to control medical malpractice insurance rates;[12] (2) to discourage baseless medical malpractice actions; (3) to reduce the practice of unnecessary and costly defensive medicine because of the fear of such actions; (4) to reduce the various personal and professional tolls imposed on health care providers by such actions; and (5) to remove the health care provider as an unduly attractive deep pocket for the collection of all of the plaintiff's damages.

It is arguable, at least, that requiring compliance with § 52-190a for apportionment complaints against health care providers would help control medical malpractice insurance rates. It is true that, because such a complaint

[12] The majority dismisses this contention as "speculative." I do not say, however, as the majority suggests, that an apportionment complaint against a health care provider *will* trigger a duty to defend; I acknowledge that this court has not decided that question. To cast the point aside as "speculative," however, simply *misses* the point, because the question of whether a duty to defend will be triggered necessarily depends on the contractual terms of the insurance policy at issue. Merely because a duty to defend *might* be triggered, as opposed to *will* be triggered, by an apportionment complaint, does not render the contention unworthy of consideration. My point is that a health care provider has a powerful argument for a duty to defend when an apportionment complaint is filed against him—a proposition that hardly can be deemed "speculative."

Indeed, this is the *only* argument presented in this concurring and dissenting opinion to which the majority responds at all. The majority does not, for example, discuss: why the other identified purposes of § 52-190a are not furthered by requiring its application to an apportionment complaint; why the provisions of § 52-102b (b) do not require such an application; or why the provisions of § 52-584 do not also require such an application.

does not seek the actual payment of money damages by the provider's carrier, there would be no occasion for a duty to indemnify. It is also true, however, that we have not, as yet, been confronted with the question of whether such a complaint would trigger a duty to defend. Nonetheless, because the duty to defend is broader than the duty to indemnify; *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, 261 Conn. 37, 40, 801 A.2d 752 (2002); the provider would, depending of course on the language of the policy, certainly have a powerful argument for the duty to defend. In the event such a duty exists, the costs thereof would likely be factored into the insurance rates.

The next three purposes would also be served. It is clear to me that requiring a defendant to make a reasonable investigation, and secure a good faith certificate, before alleging malpractice against a health care provider in an apportionment complaint, would discourage baseless allegations, help reduce the practice by providers of unduly defensive medicine, and help reduce the toll on such providers taken by such allegations. The final purpose—to remove the incentive to view the provider as a potential deep pocket—would neither be served nor disserved by imposing the requirement.

Taking the contrary view, as the majority does, moreover, would be contrary to those purposes. From the viewpoint of the provider, who has to defend himself against such allegations of malpractice, it would make little difference whether the allegations come in the form of a complaint by the plaintiff or an apportionment complaint by the defendant—in either instance, the provider is haled into court without a good faith predicate, and is required to defend himself against a factual claim of medical malpractice.

I conclude, therefore, that, on the basis of both the language and purposes of § 52-190a, taken together, an

apportionment complaint against a health care provider, based on allegations of malpractice, should appropriately be considered as coming within the meaning of § 52-102b.[13] Consequently, I turn next to the question of whether, in the present case, Community Action and Barrett have made a sufficient showing of equitable considerations to relieve them of the consequences of their failure to comply with the mandatory nature of the 120 day time limit imposed by that provision. I would conclude that they have done so.

Simply put, it was entirely reasonable, in my view, for these two defendants in a commonplace motor vehicle negligence case, to seek an additional ninety days from the court so as to make a reasonable investigation before making such serious allegations of malpractice against Neurosurgical Associates and Murphy & Lieponis. They represented to the court that such an "extension of time is necessary to allow the defendants an opportunity to conduct a reasonable inquiry as required by Connecticut General Statute[s] § 52-190[a] (a) et seq., to determine whether or not there is a good faith basis for a claim of negligence against any health care providers who rendered care and treatment to the plaintiff . . . ." We should encourage, rather than

---

[13] Indeed, in the context of tort reform legislation, we have recently followed the same principle of statutory interpretation of reading facially disparate statutory provisions "together to create a harmonious body of law . . . and . . . to avoid conflict between them." (Internal quotation marks omitted.) *Collins* v. *Colonial Penn Ins. Co.*, 257 Conn. 718, 742, 778 A.2d 899 (2001). In *Collins*, we harmonized General Statutes §§ 52-572h and 38a-336, by interpreting the phrase, "legally entitled to recover as damages," to include statutory apportionment of a contractual claim for uninsured motorist benefits, despite the provision that apportionment was not to include liability on "any basis other than negligence . . . ." (Internal quotation marks omitted.) Id., 740. This was because "[t]he uninsured motorist statutes and regulations incorporate the negligence law of liability and damages involving claims in which joint tortfeasors are present"; id., 741; and because to do so "allow[ed] for the principles guiding Tort Reform II [Public Acts 1987, No. 87-227] to be applied equitably." Id., 742.

discourage, defendants who need time beyond the statutory 120 days before making serious allegations of medical malpractice in this procedural posture, to seek a reasonable amount of time to be sure that they have a good faith basis to do so. I would, therefore, conclude that, although the 120 day time limit of § 52-102b is mandatory, the court was justified in extending it by ninety days in the present case.[14]

I therefore respectfully dissent, and would reverse the judgments of the trial courts dismissing the apportionment complaint.

---

[14] The majority itself recognized that there is a split of authority in the Superior Court as to whether an apportionment complaint against a provider requires a good faith certificate. See footnote 10 of the majority opinion. The defendants should not be penalized for following a reasonable interpretation of many of our trial court judges regarding an unsettled issue in our law.