## CANTONBURY HEIGHTS CONDOMINIUM ASSOCIATION, INC. *v.* LOCAL LAND DEVELOPMENT, LLC, ET AL.
### (SC 17274)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued January 10—officially released May 24, 2005

*Thomas C. Clark,* with whom was *Melicent B. Thompson,* for the appellant (plaintiff).

*Everett E. Newton,* with whom, on the brief, was *Dena M. Castricone,* for the appellee (named defendant).

*Robert G. Clemente,* with whom, on the brief, was *Lorinda S. Coon,* for the appellee (defendant Supreme Industries, Inc.).

*Opinion*

BORDEN, J. This appeal involves the proper interpretation of a particular clause of the declaration[1] for Cantonbury Heights, a common interest community created pursuant to the Common Interest Ownership Act (act), General Statutes § 47-200 et seq.[2] The plaintiff, Can-

---

[1] A declaration is an instrument recorded and executed in the same manner as a deed for the purpose of creating a common interest community. General Statutes § 47-220.

[2] General Statutes § 47-202 (7) provides in relevant part: " 'Common interest community' means real property described in a declaration with respect to which a person, by virtue of his ownership of a unit, is obligated to pay for (A) real property taxes on, (B) insurance premiums on, (C) maintenance of, or (D) improvement of, any other real property other than that unit described in the declaration. . . ."

tonbury Heights Condominium Association, Inc., appeals from the trial court's grant of summary judgment in favor of the defendants, Local Land Development, LLC, and Supreme Industries, Inc.[3] The plaintiff contends that the trial court improperly interpreted the declaration. We reverse the judgment in part.

The plaintiff brought this eight count complaint: (1) seeking to quiet and settle title to undeveloped real property in the common interest community; (2) alleging trespass on the real property; (3) alleging negligence with respect to the defendants' title search and work on the real property; (4) seeking indemnification from the defendants for any costs arising from environmental law violations caused by the defendants' actions on that real property; (5) alleging that the defendants' actions constituted conversion; (6) alleging that the defendants' actions constituted unjust enrichment; (7) alleging that the defendants' actions constituted statutory theft; and (8) alleging that the defendants' actions constituted unfair trade practices. The plaintiff sought temporary and permanent injunctions to prevent the defendant from exercising any rights with respect to the property, as well as damages for the defendants' actions to that point. After the trial court denied the plaintiff's motion for a temporary injunction, the plaintiff moved to reargue. Following several hearings, the trial court reaffirmed its prior decision and denied the permanent injunction as well. The defendants then moved for summary judgment, which the trial court granted as to all counts of the complaint. This appeal followed.[4]

---

[3] The plaintiff sought damages against Supreme Industries, Inc., for its actions as an agent of Local Land Development, LLC. For the sake of convenience, we refer herein to the named defendant, Local Land Development, LLC, as the defendant, to Supreme Industries, Inc., as Supreme, and to both collectively as the defendants.

[4] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The following facts and procedural history are undisputed for the purposes of this appeal. Cantonbury Development Limited Partnership, the original developer of the condominium complex known as Cantonbury Heights, filed an initial declaration establishing nine condominium units with associated common elements and reserving to itself certain special declarant rights, including the authority to exercise development rights. Those development rights included the right to create up to 132 additional condominium units. Cantonbury Development Limited Partnership subsequently transferred the special declarant rights to Cantonbury Heights Associates, which exercised certain of those rights to bring the total number of units built to sixty-seven before financial difficulties forced it to assign the rights, along with ownership of two unsold units, to Mechanics Savings Bank. Mechanics Savings Bank sold the two units it owned before executing a quit claim deed to transfer the special declarant rights to General Financial Services, Inc.

After acquiring the special declarant rights from General Financial Services, Inc., by quit claim deed, the defendant received approval from the Canton zoning commission to construct sixty-three additional condominium units in those areas designated as Phase III and Phase IV on the Cantonbury Heights site plan. In preparation for construction, Moosehead Land Clearing removed trees and other material from the area to be developed pursuant to a contract with the defendant. The defendant also contracted with West Central Enterprises, Inc., to perform excavation work in the area and with Supreme to perform site preparation work.

Before the defendant could proceed further, town authorities halted the site preparation efforts, and state authorities cited the defendant for violation of environmental laws. First, the town of Canton issued an order to cease and desist excavation and grading operations

because those operations may have been causing soil erosion into wetlands and watercourses both on and off the construction site at Cantonbury Heights. The town also claimed that the defendant had failed to comply with the terms and conditions of a permit issued by the Canton inland wetlands and watercourses agency and to construct improvements in accordance with approved drawings. Shortly thereafter, the Connecticut department of environmental protection issued a notice of violation, in which it claimed that the defendant had violated certain provisions of the general permit for the discharge of stormwater and dewatering wastewaters associated with construction activities. Then, the Canton inland wetlands and watercourses agency issued a revised cease and desist order requiring the defendant to obtain approval for a modification of the general permit and to develop a management plan for the long-term operation and maintenance of sediment and erosion control measures installed as a result of the initial cease and desist order. Finally, the department of environmental protection issued a notice of violation to the plaintiff, in which it claimed that, if the plaintiff owned the property on which the defendant had begun development work, the plaintiff may be in violation of the law and subject to its ongoing enforcement action.

Even before receiving the notice of violation from the department of environmental protection, the plaintiff had initiated the present action, seeking a temporary injunction against the defendant to prevent it from exercising any special declarant rights in Cantonbury Heights. After receiving the notice of violation, the plaintiff amended its complaint to include a count sounding in indemnity for any costs incurred by the plaintiff as a result of the violations alleged by the department of environmental protection.

In ruling on the plaintiff's motion for a temporary injunction, the trial court concluded that there existed

an insufficient likelihood of the plaintiff prevailing on the merits of the case to grant the motion. In reaching its conclusion, the trial court focused on article VIII of the declaration, which sets forth the development rights and other special declarant rights along with the limitations on those rights. Specifically, the trial court determined that "the primary issue [was] whether the special declarant rights, which include development rights . . . [had] expired pursuant to § 8.9 of the declaration . . . ." Section 8.9 of article VIII of the declaration provides: "Unless sooner terminated by a recorded instrument executed by the Declarant, any Special Declarant Right may be exercised by the Declarant so long as the Declarant is obligated under any warranty or obligation, owns any units or any Security Interest on any Units, or for 21 years after recording the Declaration, whichever is sooner. Earlier termination of certain rights may occur by statute. Additional limitations occur in Article XVIII." Because the parties had agreed that the defendant was not obligated under any warranties, and did not own any units or any security interest therein, the issue before the trial court was whether the defendant remained obligated under any other obligation contemplated by the declaration. The trial court concluded that the defendant, as the successor to the special declarant rights, continued to be bound by the obligations imposed by the act, including the obligations to pay taxes and all expenses, such as maintenance and insurance expenses, on those portions of the common elements for which development rights had been reserved. Furthermore, the trial court concluded that the defendant remained liable for its torts in connection with the common interest property that it had the responsibility to maintain. Thus, because the trial court concluded that these obligations satisfied the requirement in § 8.9 of the declaration that the declarant be "obligated under any . . . obligation," it concluded that the plaintiff

could not prevail on the merits. The trial court also found that the defendant had corrected the environmental violations and brought the project into compliance with the orders of the Canton inland wetlands and watercourses agency and the department of environmental protection.

The plaintiff subsequently filed a motion for reargument, claiming that the trial court had ignored unambiguous language in § 8.9 of article VIII of the declaration, and that it had failed to address the implication of § 18.5 of article XVIII of the declaration, which requires the consent of 51 percent of the eligible mortgagees of units at Cantonbury Heights for declarant rights to be exercised beyond seven years after the declaration was recorded. In response, the trial court held a hearing on the plaintiff's motion where it suggested that the issue of eligible mortgagee consent could be avoided if the defendant obtained the consents, which the defendant agreed to attempt to do. The parties also stipulated that the plaintiff's motion for a temporary injunction should be considered as a claim for a permanent injunction. The defendant eventually offered the consents of all three eligible mortgagees at a separate hearing. The consents were in the mode of a form prepared by the defendant's attorney for each mortgagee and signed by an agent of that mortgagee purporting to give the necessary consent. The plaintiff objected to admission of the consent forms as hearsay. The trial court concluded that the forms were admissible as verbal acts. Because the trial court concluded that it had interpreted § 8.9 of the declaration properly, and that the defendant had satisfied the requirements of § 18.5, it reaffirmed its earlier decision and denied the plaintiff's claim for a permanent injunction.

On the basis of the trial court's rulings, the defendants moved for summary judgment on all counts of the complaint. The trial court granted the motion for summary

judgment because it concluded that its earlier findings prevented the plaintiff from prevailing. The court's finding that the defendant's special declarant rights had not expired was dispositive of seven of the eight counts in the plaintiff's amended complaint. On the fourth count of the amended complaint, which sounded in indemnity for any costs incurred by the plaintiff as a result of violations alleged by the department of environmental protection, the trial court ruled for the defendants on the basis of its earlier ruling that the defendant had corrected all violations and had brought the project into compliance with the orders of the department of environmental protection and the Canton inland wetlands and watercourses agency.

The plaintiff makes the following three arguments on appeal: (1) the defendant cannot exercise the special declarant rights because those rights have expired under the terms of the declaration; (2) the consent forms, provided as evidence of the eligible mortgagee consent to the exercise of the special declarant rights beyond the seven year limitation provided in the declaration, were inadmissible hearsay, not verbal acts; and (3) the trial court lacked any legal or factual basis for rendering summary judgment in favor of the defendants. The defendants counter each of the plaintiff's arguments and also contend that eligible mortgagee consent was not required to begin construction of the new units. In addition, Supreme contends that the grant of summary judgment on those counts of the complaint sounding in conversion, unjust enrichment and statutory theft can be affirmed with respect to it on the alternate ground that the parties have stipulated that it did not participate in the tree removal that serves as the basis for those counts. Because we agree that the special declarant rights have expired pursuant to the terms of the declaration, we need not reach the plaintiff's second argument or the defendants' counter argu-

ments. We also conclude, however, that the trial court lacked a sufficient factual basis to grant the defendants summary judgment on the count of the complaint sounding in indemnity, but that it had a sufficient legal and factual basis to grant Supreme summary judgment on the counts of the complaint sounding in conversion, unjust enrichment and statutory theft.

As a preliminary matter, we set forth the applicable standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Rocco* v. *Garrison*, 268 Conn. 541, 548–49, 848 A.2d 352 (2004).

I

On seven of the eight counts in the complaint, the court granted summary judgment in favor of the defendants because it concluded, based on its interpretation of the declaration, that the defendant had authority to exercise the development rights contained in the declaration.[5] Our review of that conclusion begins with a review of the declaration's operative terms.

---

[5] The following counts of the complaint were resolved based on the trial court's interpretation of the declaration: count one to quiet title to the property; count two for trespass; count three for negligence; count five for conversion; count six for unjust enrichment; count seven for statutory theft; and count eight for unfair trade practices.

Article VIII of the declaration, entitled "Development Rights and Other Special Declarant Rights," contains those terms relevant to our resolution of the present case. Section 8.1 of article VIII reserves certain development rights to the declarant including "[t]he right to add Units and Limited Common Elements in the location shown as 'Development Rights Reserved in this Area' on the Survey and Plans." Section 8.2 of article VIII then places certain limitations on the development rights, providing in relevant part: "(a) The Development Rights may be exercised at any time, but not more than 21 years after the recording of the initial Declaration; (b) Not more than a total of 132 additional Units may be created under the Development Rights . . . (e) No Development Rights may be exercised unless approved pursuant to Section 18.5."

Section 8.2 of article VIII of the declaration does not contain all of the limitations on the development rights, however, because, although § 8.1 reserves the development rights, § 8.4 makes the authority to *exercise* those rights a special declarant right. Thus, any limitation placed on the special declarant rights also effectively operates as a limitation on the development rights. Section 8.9 contains the relevant limitations on the special declarant rights. Therefore, the determination of whether the defendant's development rights have expired pursuant to the declaration requires an interpretation of § 8.9.

Because the declaration operates in the nature of a contract, in that it establishes the parties' rights and obligations, we apply the rules of contract construction to the interpretation of § 8.9 of article VIII. In ascertaining the contractual rights and obligations of the parties, we seek to effectuate their intent, which is derived from the language employed in the contract, taking into consideration the circumstances of the parties and the transaction. *Alstom Power, Inc.* v. *Balcke-Durr, Inc.*,

269 Conn. 599, 610, 849 A.2d 804 (2004); *Levine* v. *Advest, Inc.*, 244 Conn. 732, 745, 714 A.2d 649 (1998). We accord the language employed in the contract a rational construction based on its common, natural and ordinary meaning and usage as applied to the subject matter of the contract. *Alstom Power, Inc.* v. *Balcke-Durr, Inc.*, supra, 610. Where the language is unambiguous, we must give the contract effect according to its terms. Id. Where the language is ambiguous, however, we must construe those ambiguities against the drafter. *Hartford Electric Applicators of Thermalux, Inc.* v. *Alden*, 169 Conn. 177, 182, 363 A.2d 135 (1975). This approach corresponds with the general rule that "[a]ny ambiguity in a declaration of condominium must be construed against the developer who authored the declaration." 15A Am Jur. 2d, Condominiums and Cooperative Apartments § 8 (2000).

"A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Citations omitted; internal quotation marks omitted.) *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 670–71, 791 A.2d 546 (2002).

Section 8.9 of article VIII of the declaration provides: "Unless sooner terminated by a recorded instrument executed by the Declarant, any Special Declarant Right may be exercised by the Declarant so long as the Declarant is obligated under any warranty or obligation, owns any units or any Security Interest on any Units, or for 21 years after recording the Declaration, whichever is sooner. Earlier termination of certain rights may occur by statute. Additional limitations occur in Article XVIII." Neither termination by a recorded instrument nor by statute applies in the present case, and we need not address the limitations in article XVIII. Thus, the disputed portion of § 8.9 of article VIII is the following language: "so long as the Declarant is obligated under any warranty or obligation, owns any units or any Security Interest on any Units, or for 21 years after recording the Declaration, whichever is sooner."

The parties disagree about two aspects of this language of § 8.9 of article VIII of the declaration: (1) whether each of the listed conditions operates as an independent trigger to terminate special declarant rights; and (2) what types of obligations satisfy the requirement that the declarant be "obligated under any . . . obligation . . . ." With respect to the first aspect, the plaintiff argues that in order to give effect to the phrase "whichever is sooner," each condition must be read as an independent trigger that terminates special declarant rights. In other words, according to the plaintiff's interpretation, the declarant must be obligated under a warranty or obligation *and* own a unit *and* maintain a security interest on a unit, *and* less than twenty-one years must have elapsed since the recording of the declaration in order for the declarant to exercise special declarant rights. The defendant counters that the phrase "whichever is sooner," coupled with the twenty-one year time limit constitutes a termination provision, and that as long as less than twenty-one years

have elapsed, the declarant need only be obligated under a warranty or obligation *or* own a unit or a security interest on a unit. We agree with the defendant.

We discern no ambiguity in the language of § 8.9 of article VIII of the declaration allowing special declarant rights to be exercised for twenty-one years or until the declarant no longer satisfied any of the other conditions, whichever occurred sooner. In essence, the plaintiff suggests that we insert the word "and" between the first two conditions and replace the word "or" with "and" between the ownership and security conditions to create the phrase "under any warranty or obligation, *and* owns any units *and* any Security Interest on any Units, or for 21 years . . . ." (Emphasis added.) When a list is joined by the disjunctive "or," as this one is, common usage strongly suggests that each item in the list be read to be separated by "or," not "and." Contrary to the plaintiff's assertions, this interpretation still gives effect to the phrase, "whichever is sooner," because that phrase is intended to compare the declarant's ability to satisfy any one of the other conditions to the twenty-one year time limit. The plaintiff seeks to create ambiguity where it does not exist and to resolve the ambiguity by inserting words in the language of the declaration with no justification for doing so.

With respect to the second aspect, namely, what types of obligations satisfy the condition that the declarant be under an obligation,[6] the plaintiff argues that only obligations *to the unit owners* qualify. The defendant

[6] No dispute exists between the parties with regard to the defendant's ability to satisfy any of the conditions other than whether it still has obligations pursuant to the declaration. Twenty-one years have not passed since the declaration was recorded. The defendant neither has any warranty obligations, nor does it own or maintain a security interest in any of the units. Therefore, the special declarant rights remain viable if, and only if, the defendant remains obligated under any obligation contemplated by § 8.9 of article VIII of the declaration.

counters that the term includes tax, expense and liability obligations associated with its position as the declarant. Because each of the parties offers a reasonable interpretation of the term in light of the origin and the purpose of the declaration, we conclude that the contract is ambiguous as to what type of obligation the declarant must be under to satisfy the § 8.9 limitation on the special declarant rights. "If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, supra, 259 Conn. 671.

Normally, where the contract language is not definitive, the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous. *HLO Land Ownership Associates Ltd. Partnership* v. *Hartford*, 248 Conn. 350, 357, 727 A.2d 1260 (1999). In the present case, however, the trial court did not indicate whether it considered the term "obligation" to be ambiguous. Regardless, we conclude that the term is ambiguous, and that the trial court failed to apply properly the rule of contract construction that requires ambiguities to be construed against the drafter.

The plaintiff bases its contention that the term "obligation" must refer to obligations to unit owners on three premises: (1) including obligations to third parties in the meaning of the term would eliminate all limitations on the exercise of special declarant rights except the twenty-one year time limit; (2) relevant portions of the act support this interpretation; and (3) the use of the term "warranty" in conjunction with "obligation" supports this interpretation. In addition, the plaintiff proffers a plausible reason why its interpretation has a natural practical effect. We conclude that the plaintiff's proffered interpretation of "obligation" is sufficiently

plausible to invoke the rule of construction against the drafter of the declaration.

First, the tax liabilities and other obligations that the declarant owes to third parties remain in place until the declarant fully exercises all development rights, or those rights lapse for other reasons. For instance, General Statutes § 47-204 (c) continues the declarant's tax liability so long as he has reserved development rights: "Any portion of the common elements for which the declarant has reserved any development right shall be separately taxed and assessed against the declarant, and the declarant alone is liable for the payment of those taxes." Thus, including the tax liabilities as an "obligation" pursuant to § 8.9 of article VIII of the declaration results in circular support between the tax liabilities and the development rights: the declarant maintains special declarant rights, which include development rights, because he has tax liabilities, and has tax liabilities because he maintains the development rights. Such a result would render the other limitations in § 8.9, other than the twenty-one year time limit, mere surplusage. If tax liabilities satisfy the "obligation" condition, the declarant would always be under an "obligation" until all of the development rights were exercised, making the warranty, ownership and security interest conditions meaningless.

Second, the language and structure of General Statutes § 47-246 mirrors § 3-104 of the Uniform Common Interest Ownership Act (uniform act). See Uniform Common Interest Ownership Act § 3-104, 7 U.L.A. 99 (2002). That section governs which obligations and liabilities are imposed upon a third party who assumes declarant status through a transfer of the existing declarant's interest in a common interest community, as occurred in the present case. The comment to § 3-104 of the uniform act identifies two issues associated with imposing obligations and liabilities on the succes-

sor declarant along with the section's objective in resolving those issues. Id., 101. "First, what obligations and liabilities *to unit owners* (both existing and future) should a declarant retain, notwithstanding his transfer of interests. Second, what obligations and liabilities may fairly be imposed upon the declarant's successor in interest. . . . This section strikes a balance between the obvious need to protect the interests of unit owners and the equally important need to protect innocent successors to a declarant's rights . . . . The general scheme of the section is to impose upon a declarant continuing obligations and liabilities for promises, acts, or omissions undertaken during the period that he was in control of the community, while relieving a declarant who transfers all or part of his special declarant rights in a project of such responsibilities with respect to the promises, acts, or omissions of a successor over whom he has no control." (Emphasis added.) Id. Although § 8.9 of article VIII of the declaration deals with limitations on special declarant rights, rather than the transfer of those rights, the plaintiff argues that this comment indicates that the obligations contemplated by the uniform act, and, by reference, the act, are those obligations to unit owners, not to third parties. Thus, the use of the term "obligation" in the declaration, which must adhere to the requirements of the act, creates a plausible inference that the parties intended that obligation to be to the unit owners.

Third, the use of the phrase "obligated under any warranty or obligation" in § 8.9 of article VIII of the declaration suggests that the terms "warranty" and "obligation" implicate duties to the same party. Where a provision contains two or more words grouped together, we often examine a particular word's relationship to the associated words and phrases to determine its meaning pursuant to the canon of construction noscitur a sociis. *Connecticut National Bank* v. *Giacomi,*

242 Conn. 17, 33, 699 A.2d 101 (1997). Although the declaration does not contain a definition of the term "warranty," the plaintiff asserts, and the defendant does not deny, that a warranty is an obligation *to a unit owner*. Furthermore, this construction is consistent with the context of the declaration. Because the declaration groups the terms "warranty" and "obligation," and the declarant would be obligated to the unit owners under a warranty, it would be plausible to conclude that the declarant must also be obligated to the unit owners under an obligation in order to exercise special declarant rights.

Finally, the plaintiff proffers a plausible practical effect of its interpretation of the clause. The plaintiff's interpretation of the clause prevents the declarant from extending development of the common interest community out over such a long period of time that it harms the investments of the existing unit owners in their properties. The plaintiff contends that a development pattern that results in the addition of new units in the same development as considerably older existing units adversely affects the interests of all unit owners because the value of the existing units decreases while, at the same time, purchasers of the new units must pay higher maintenance fees than a new unit normally would require in order to perform the necessary upkeep, such as roofing and siding replacement, on the existing units. Requiring the declarant to initiate the next phase of development in the community while he still has obligations to the existing unit owners in order to protect the development rights, on the other hand, facilitates the creation of a comprehensive, cohesive condominium development by forcing the declarant either to proceed with development of follow-on phases in a timely manner or to maintain an ownership or security interest in the existing units and risk the adverse effects of extending the development period.

The defendant maintains, however, that limiting the term "obligation" to obligations to unit owners requires this court to do three things: (1) add the phrase "to existing unit owners" after the term "obligation" in the existing declaration; (2) ignore the word "any" that precedes "warranty or obligation"; and (3) ignore the provisions of the act that impose obligations, such as taxes and other duties, on the declarant. Furthermore, the defendant argues, the term "obligation" in the declaration is not ambiguous, and the trial court did not find it to be so. In essence, the defendant claims that the declaration language "obligated under any . . . obligation" means just that; any obligation suffices to preserve the special declarant rights. Although the defendant's interpretation is certainly plausible, it does not suffice to render the plaintiff's interpretation implausible. At most, it simply shows that the language at issue is ambiguous.

In sum, we are not completely persuaded by either party's interpretation of the declaration. Thus, we must rely upon the applicable rule of contract construction, namely, where the language is ambiguous we must construe those ambiguities against the drafter. *Hartford Electric Applicators of Thermalux, Inc.* v. *Alden*, supra, 169 Conn. 182. As the successor in interest to the rights of the original declarant, the defendant stands in its shoes. Accordingly, we conclude that the term "obligation" in § 8.9 of article VIII of the declaration refers to obligations to the unit owners. Because the defendant neither has any obligations to the unit owners nor satisfies any of the other conditions necessary to preserve the special declarant rights, the defendant possesses no special declarant rights, including the authority to exercise development rights.

II

Our conclusion that the defendant possesses no special declarant rights necessitates a reversal of the trial

court's grant of summary judgment in favor of the defendant on seven of the eight counts in the complaint and in favor of Supreme on four of the eight counts in the complaint. It does not resolve, however, the trial court's grant of summary judgment on count four of the complaint, which sounded in indemnity for any costs associated with defending against the notice of violation issued to the plaintiff by the department of environmental protection and for any costs required to bring the property into conformance with environmental requirements, with respect to either the defendant or Supreme. Furthermore, it does not preclude a conclusion that the trial court's grant of summary judgment in favor of Supreme on the counts sounding in conversion, unjust enrichment and statutory theft should be affirmed on alternate grounds.

The trial court based its grant of summary judgment on the indemnification count of the complaint on its earlier finding that the defendant had corrected all violations and brought the project into compliance with the orders of both the department of environmental protection and the Canton inland wetlands and watercourses agency. The plaintiff claims that this determination was not supported by the evidence. We agree.

The record contains three items of correspondence from the department of environmental protection: (1) the initial notice of violation sent to the defendant; (2) a letter acknowledging receipt of and approving the defendant's plan to correct the violations; and (3) a letter informing the plaintiff that it may be held party to the ongoing enforcement action as the owner of a property on which violations of law are ongoing. Although the second item of correspondence indicated that the defendant's plans to resolve the violations were satisfactory, it also indicated that final closure required final negotiation of a supplemental environmental penalty and implementation of the plans submitted. At the

time the defendant received the correspondence, it could not implement the plans because it was still under a cease and desist order from the Canton inland wetlands and watercourses agency. Moreover, the third item of correspondence stated that finalization of the agreement with the defendant was pending the Canton inland wetlands and watercourses agency's lifting of the cease and desist order to allow installation of controls.

The defendant's president did submit an affidavit indicating that the defendant had complied with all department of environmental protection requirements. That affidavit had a letter from the Canton inland wetlands and watercourses agency attached that indicated that the cease and desist order had been lifted. That letter had been issued prior to the trial court's memorandum of decision concerning the temporary injunction. The affidavit, with the letter attached, was not submitted, however, until the defendants moved for summary judgment. No indication exists that the letter or any testimony or affidavits were in evidence prior to the trial court's finding that the defendant had corrected all violations and brought the project into compliance with the orders of the department of environmental protection. Finally, even if the trial court was aware of the Canton inland wetlands and watercourses agency letter when the court made its finding, that letter fails to establish that the defendant had completed all of the steps necessary to achieve closure with the department of environmental protection. Thus, we conclude that the trial court lacked any evidentiary basis on which to base its finding that the defendant had corrected all violations and brought the project into compliance with the orders of the department of environmental protection. Because the defendants failed to meet the burden of showing the absence of any genuine issue of material fact on the issue of compliance with the orders of the department of environmental protection, they were not

entitled to summary judgment on the count of the complaint sounding in indemnification.

The trial court did, however, have a sufficient legal and factual basis to grant summary judgment in favor of Supreme on counts five, six and seven of the complaint sounding in conversion, unjust enrichment and statutory theft, respectively. The plaintiff based those counts of the complaint on the defendants' actions of wrongfully cutting down trees on the disputed property, removing the trees from the property and selling the trees for a profit. The joint stipulations of fact specifically state that the trees were cut down and removed by the defendant or Moosehead Land Clearing, not Supreme. "A formal stipulation of facts by the parties to an action constitutes a mutual judicial admission and under ordinary circumstances should be adopted by the court in deciding the case." *Central Coat, Apron & Linen Service, Inc.* v. *Indemnity Ins. Co. of North America*, 136 Conn. 234, 236, 70 A.2d 126 (1949). "A party is bound by a judicial admission unless the court, in the exercise of a reasonable discretion, allows the admission to be withdrawn, explained or modified." *Hirsch* v. *Thrall*, 148 Conn. 202, 206–207, 169 A.2d 271 (1961). We can discern no reason to subject Supreme to a potential judgment for actions that the plaintiff admits were conducted by another party. Accordingly, we affirm the grant of summary judgment in favor of Supreme on counts five, six and seven of the complaint, sounding in conversion, unjust enrichment and statutory theft, respectively.

To summarize, we reverse the grant of summary judgment in favor of both defendants on count one of the amended complaint seeking to quiet and settle title to the real property, count two sounding in trespass, count three sounding in negligence and count eight sounding in unfair trade practices because the defendant does not possess special declarant rights. We also reverse

the grant of summary judgment in favor of the defendant on count five of the amended complaint sounding in conversion, count six sounding in unjust enrichment and count seven sounding in statutory theft because it does not possess special declarant rights. We reverse the grant of summary judgment in favor of both defendants on count four of the amended complaint sounding in indemnity because the trial court's determination that the defendant had corrected all violations and brought the project into compliance with the orders of both the department of environmental protection and the Canton inland wetlands and watercourses agency was not supported by the evidence. Finally, we affirm the grant of summary judgment in favor of Supreme on count five of the amended complaint sounding in conversion, count six sounding in unjust enrichment and count seven sounding in statutory theft because the plaintiff is bound by its judicial admission contained in the joint stipulations of fact that Supreme did not perform the tree removal activity that forms the basis of those counts of the complaint.

The judgment is reversed in part and affirmed in part, and the case is remanded for further proceedings in accordance with the preceding paragraph.

In this opinion the other justices concurred.