SOUTHWICK AT MILFORD CONDOMINIUM
ASSOCIATION, INC. *v.* 523 WHEELERS
FARM ROAD, MILFORD, LLC
(SC 18243)

Rogers, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.

Argued January 13—officially released December 22, 2009

*Gerald L. Garlick*, with whom were *Robert M. Shields, Jr.*, and, on the brief, *Katherine E. Abel*, for the appellant (defendant).

*Ronald J. Barba*, for the appellee (plaintiff).

*Opinion*

PALMER, J. The defendant, 523 Wheelers Farm Road, Milford, LLC, a developer exercising special declarant rights in Southwick at Milford Condominium, a common interest community created pursuant to the Common Interest Ownership Act (act),[1] General Statutes

---

[1] "[The act] is a comprehensive legislative scheme that governs the creation, organization and management of all forms of common interest communities." *Fruin* v. *Colonnade One at Old Greenwich Ltd. Partnership*, 237 Conn. 123, 130, 676 A.2d 369 (1996). "[The act] expressly aspires to serve as a 'general act intended as a unified coverage of its subject matter . . . .'" Id., 131, quoting General Statutes § 47-208.

§ 47-200 et seq., appeals[2] from the judgment of the trial court rendered in favor of the plaintiff, Southwick at Milford Condominium Association, Inc. The defendant contends, inter alia, that the trial court incorrectly concluded that the defendant no longer owed any obligation to the condominium unit owners under the terms of the declaration[3] pursuant to which Southwick at Milford Condominium was created and, as a consequence, that its special declarant rights had lapsed. We agree with the defendant and, accordingly, reverse the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our disposition of the defendant's appeal. Southwick at Milford Condominium[4] was created as a common interest community pursuant to the provisions of the act by a June 4, 1999 declaration made by the original declarant, MDA Milford, LLC (MDA). In the declaration, MDA reserved to itself a variety of special declarant rights, including the right to "complete" improvements on the land, to exercise development rights on the land, and to grant and use easements throughout the land. Pursuant to § 7.9 of the declaration, however, the special declarant rights could be exercised only as "long as the Declarant is obligated under any warranty or obligation, owns any Units or any Security Interest on any Units, or for twenty . . .

---

[2] The defendant appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] "A declaration is an instrument recorded and executed in the same manner as a deed for the purpose of creating a common interest community." *Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC*, 273 Conn. 724, 726 n.1, 873 A.2d 898 (2005), citing General Statutes § 47-220. "[T]he declaration operates in the nature of a contract, in that it establishes the parties' rights and obligations . . . ." *Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC*, supra, 734.

[4] Southwick at Milford Condominium is located in the town and city of Milford.

years after recording the Declaration, whichever is sooner."

As part of MDA's development of the condominium project, it created a site plan establishing development phase boundaries. This site plan contained two phases.[5] Phase two of the site plan contains many proposed structures, including two clubhouses, a gazebo, a semi-independent living area that is divided into two wings, and an assisted living unit area. All of the structures, except for the gazebo and one of the clubhouses, are marked with the labels "Need Not Be Built" and "Development Rights Reserved." In both phase one and phase two of the site plan, there is a notation that provides: "Development Rights Reserved In This Area (To Add Units, Common Elements, Limited Common Elements And To Add And/Or Withdraw Land)." In phase two, however, unlike in phase one, all of the structures, except for the previously mentioned unmarked gazebo and clubhouse, contain the additional notation of "Development Rights Reserved."

After encountering financial trouble, MDA defaulted on its mortgage with New Haven Savings Bank (bank). In 2001, the bank instituted a foreclosure action against MDA, thereby acquiring title to "all development rights and special declarant rights referenced in [the June 4, 1999 Southwick at Milford Condominium declaration] . . . ." On December 31, 2002, the bank quitclaimed all of its rights in Southwick at Milford Condominium to the defendant, including all special declarant rights.

In August, 2005, the defendant filed an application with the planning and zoning board of the city and town of Milford to commence construction of additional condominium units on the subject property, and the

---

[5] We note that phase one itself was comprised of two distinct phases, labeled "Phase I" and "Phase IA." Neither part of phase one, however, is relevant to this appeal.

application was approved on September 20, 2005. On April 11, 2006, the plaintiff commenced the present action on behalf of all Southwick at Milford Condominium unit owners seeking, inter alia, temporary and permanent injunctions prohibiting the defendant from entering the subject property and exercising any special declarant rights. The plaintiff also sought a judgment declaring that the defendant's special declarant rights had lapsed under the terms of the declaration because the defendant did not own any units or security interest in any units and no longer was obligated under any warranty or other obligation. The defendant filed a counterclaim seeking, inter alia, a judgment declaring that its special declarant rights had not lapsed.

The parties filed separate motions for summary judgment. Because the defendant stipulated to the fact that it owed the unit owners no warranty obligations and the fact that it owned no units or security interest in any units, the only issue presented by the parties' motions was whether the defendant owed the unit owners some other obligation that would prevent its special declarant rights from lapsing. The defendant claimed that it did owe such an obligation pursuant to General Statutes § 47-280 (a),[6] which mandates the construction of any buildings or structures depicted in a site plan or survey that are not labeled " 'NEED NOT BE BUILT' . . . ." Specifically, the defendant contended that two structures depicted in phase two of the site plan, namely, a gazebo and one of two clubhouses, were not marked with the "need not be built" label, even though many other structures depicted in the site plan were so labeled. The defendant also maintained that, because,

---

[6] General Statutes § 47-280 (a) provides: "Except for improvements labeled 'NEED NOT BE BUILT', the declarant shall complete all improvements depicted on any site plan or other graphic representation, including any surveys or plans prepared pursuant to section 47-228, whether or not that site plan or other graphic representation is contained in the public offering statement or in any promotional material distributed by or for the declarant."

under General Statutes § 47-246 (e) (2) (A),[7] a successor declarant owes all the obligations that the original declarant owed, it was obligated to construct the gazebo and clubhouse and, therefore, owed an obligation to the unit owners such that its development rights under the declaration had not lapsed.

The trial court rejected the defendant's claim, concluding that, because the terms of the site plan and declaration authorized the declarant or its successor to withdraw the land underlying phase two of the development, then, logically, the defendant never had an obligation to build any of the structures located on that land and, therefore, owed no obligation to the individual unit owners. The court reasoned that "[t]he obligations imposed by § 47-280 are not triggered by the inclusion of a gazebo and clubhouse on the site map per se [because] the defendant had the right to, at any time, withdraw that entire portion of the development." The court further explained that the defendant's interpretation of § 47-280 would yield an unreasonable result because a developer could "extend its development rights to the maximum duration allowed [under the declaration] simply by leaving a minor improvement in a separate development phase unlabeled on the site plan, thus contravening the purpose of the [declaration]." The court also observed that the defendant's interpretation of § 47-280 "fail[ed] to recognize the practical distinction between various portions of a planned development and the varying obligations a developer has with respect to each. [If], for example, the clubhouse and gazebo [had] been contained within [p]hase [one], the defendant's argument would be compelling; likewise, if the defendant had begun construction on

---

[7] General Statutes § 47-246 (e) provides in relevant part: "(2) A successor to any special declarant right . . . is subject to the obligations and liabilities imposed by [the act] or the declaration: (A) On a declarant which relate to the successor's exercise or nonexercise of special declarant rights . . . ."

the units in [p]hase [two], the plaintiff would be hard-pressed to suggest [that] the defendant had no obligation to build the clubhouse and gazebo once [the] right to withdraw the land . . . was no longer available."

In reaching its determination, the trial court also relied on the principle that an ambiguity in a declaration must be construed against the developer who drafted it. The court explained that if the land comprising phase two could be withdrawn from the development, then the structures that were intended to be built on that land also could be withdrawn and, therefore, did not "constitute unequivocal 'obligations' owed to current unit owners . . . ." In accordance with this reasoning, the trial court concluded that the defendant's special declarant rights had lapsed, denied the defendant's motion for summary judgment, granted the plaintiff's motion for summary judgment and rendered judgment thereon for the plaintiff.

On appeal, the defendant contends that the trial court incorrectly determined that the defendant owed no obligation to the unit owners. The defendant first claims that it was obligated under § 47-280 (a) to build all of the improvements depicted on the site plan that were not labeled "need not be built." The defendant asserts that the trial court's contrary interpretation reads an exception into § 47-280 (a) that does not exist, namely, an exception for improvements that are listed on land that the developer has reserved the right to remove from the development. The defendant also raises a second claim, namely, that the trial court incorrectly concluded that promotional materials are irrelevant to a determination of a declarant's obligations under § 47-280 (a), even though that provision specifically provides that the obligation to build improvements includes improvements depicted in "any promotional material distributed by or for the declarant." General Statutes § 47-280 (a). We agree with the defendant that it was

obligated under § 47-280 (a) to build all improvements depicted in phase two of the site plan that were not designated "need not be built."[8]

We begin our analysis by setting forth the applicable standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a party's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 198–99, 931 A.2d 916 (2007).

The defendant's claim also presents a question of statutory interpretation over which our review also is plenary. See, e.g., *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 294, 933 A.2d 256 (2007). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning,

---

[8] We therefore need not address the defendant's second claim.

General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 294–95.

We begin with the relevant language of General Statutes § 47-280 (a), which provides that, "[e]xcept for improvements labeled 'NEED NOT BE BUILT', the declarant *shall* complete all improvements depicted on any site plan or other graphic representation, including any surveys or plans prepared pursuant to section 47-228, whether or not that site plan or other graphic representation is contained in the public offering statement or in any promotional material distributed by or for the declarant." (Emphasis added.) We agree with the defendant that, although it is authorized under the declaration and site plan to withdraw land from phase two of the development, § 47-280 clearly and unequivocally obligates it to complete all improvements depicted in the original site plan that are not labeled "need not be built." It is well established that the legislature's use of the word "shall" suggests a mandatory command. "As we have often stated, [d]efinitive words, such as must or shall, ordinarily express legislative mandates of a nondirectory nature." (Internal quotation marks omitted.) *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 20, 848 A.2d 418 (2004).

Nevertheless, we also have recognized "that the word 'shall' is not [necessarily] dispositive on the issue of whether a statute is mandatory." Id., 22. Accordingly, we have explained that "[t]he test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance of a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially [when] the requirement is stated in affirmative terms unaccompanied by negative words." (Internal quotation marks omitted.) Id., 19; accord *Weems* v. *Citigroup, Inc.*, 289 Conn. 769, 790, 961 A.2d 349 (2008). Because the sole purpose of § 47-280 (a) is to obligate the declarant to complete all improvements except those labeled "need not be built," it is apparent that the completion requirement is a matter of substance. The fact that that requirement expressly includes improvements depicted in "any surveys or plans prepared pursuant to section 47-228," and, in addition, broadly pertains regardless of "whether . . . [the] site plan or other graphic representation is contained in the public offering statement or in any promotional material distributed by or for the declarant"; General Statutes § 47-280 (a); also supports the conclusion that the declarant's obligation is mandatory.

Moreover, if the legislature had intended to create any exception to this rule, including one for improvements that are located on land that the developer has reserved the right to remove from the development, we must assume that it would have said so expressly. "[I]t is a principle of statutory construction that a court must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions

merely because it appears that good reasons exist for adding them. . . . The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." (Internal quotation marks omitted.) *Bloomfield* v. *United Electrical, Radio & Machine Workers of America, Connecticut Independent Police Union, Local 14,* 285 Conn. 278, 289, 939 A.2d 561 (2008); see also *Farmers Texas County Mutual* v. *Hertz Corp.,* 282 Conn. 535, 546–47, 923 A.2d 673 (2007) ("declin[ing] to engraft additional requirements onto clear statutory language" [internal quotation marks omitted]); *Laliberte* v. *United Security, Inc.,* 261 Conn. 181, 186, 801 A.2d 783 (2002) ("[i]t is not the function of the courts to enhance or supplement a statute containing clearly expressed language").

Thus, we conclude that the defendant is obligated under the provisions of § 47-280 (a) to construct all improvements depicted on the site plan that are not labeled "need not be built" and that, as a consequence, it continues to owe an obligation to the individual unit owners to construct the gazebo and the clubhouse. We note, furthermore, that the language of the site plan reinforces our conclusion. As we previously indicated, every structure depicted in phase two of the site plan, except for one of the clubhouses and the gazebo, is marked with the labels "Need Not Be Built" and "Development Rights Reserved." At the center of phase two of the site plan is a statement indicating what the reservation of development rights entails: "Development Rights Reserved In This Area (To Add Units, Common Elements, Limited Common Elements And To Add And/Or Withdraw Land)." Thus, consistent with the defendant's obligation under § 47-280 (a) to build the clubhouse and the gazebo, both of which were not labeled

"need not be built," it appears that the defendant is not free to remove the land on which those two structures were to be built because they are not labeled "development rights reserved." If the original declarant had wished to reserve development rights as to those structures, as it did with the others, we must presume that it would have done so in a consistent manner. Cf. *Levine* v. *Massey*, 232 Conn. 272, 279, 654 A.2d 737 (1995) (noting that terms cannot be added to contract by interpretation).

We disagree with the plaintiff's contention that *Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC*, 273 Conn. 724, 873 A.2d 898 (2005) (*Cantonbury*), compels a different result. In *Cantonbury*, we were required to interpret a declaration in connection with our determination of "what types of obligations satisfy the condition that the declarant be under an obligation" to preserve its special declarant rights. Id., 737. Like the declaration in the present case, the declaration in *Cantonbury* provided: "Unless sooner terminated by a recorded instrument executed by the Declarant, any Special Declarant Right may be exercised by the Declarant so long as the Declarant is obligated under any warranty or obligation, owns any units or any Security Interest on any Units, or for [twenty-one] years after recording the Declaration, whichever is sooner." (Internal quotation marks omitted.) Id., 730. The plaintiff, an association of condominium owners, argued that only obligations to the individual unit owners qualified as "obligations" under the declaration. Id., 737. The defendant developer contended that the term encompassed obligations to third parties, including, "tax, expense and liability obligations associated with its position as the declarant." Id., 738. "Because each of the parties offer[ed] a reasonable interpretation of the term in light of the origin and the purpose of the declaration, we conclude[d] that the

contract [was] ambiguous as to what type of obligation the declarant [had to] be under to satisfy the . . . limitation on the special declarant rights." Id. We resolved the ambiguity by applying the rule of contract construction pursuant to which ambiguities are construed against the drafter; id., 738, 742; and concluded, therefore, that the defendant developer's special declarant rights had lapsed because it no longer owed any obligation to the individual unit owners and did not "satisf[y] any of the other conditions necessary to preserve [its] special declarant rights . . . ." Id., 742.

The plaintiff contends that, because the defendant in the present case reserved the right to withdraw the land underlying phase two of the development, its obligation to build the gazebo and one of the clubhouses is equivocal and, therefore, that the site plan is ambiguous. The plaintiff further contends that *Cantonbury* requires this court to construe the ambiguity against the defendant, which would compel this court to conclude that the defendant owes no obligation to the unit owners. We disagree. In the present case, unlike in *Cantonbury*, we are not required to interpret the declaration. Our task, rather, is limited to interpreting § 47-280 (a) as it applies to the factual scenario presented or, more specifically, to the site plan and the improvements depicted therein. As we previously explained, because § 47-280 (a) imposes a duty on the defendant to complete all improvements on the site plan that are not labeled "need not be built," the defendant continues to owe an obligation to the unit owners that is sufficient to warrant the exercise of its special declarant rights. Put differently, when, as in the present case, a declarant reserves the right to withdraw land from a condominium development, § 47-280 (a) limits that right by holding the declarant responsible for building any improvements depicted in the site plan that are not labeled "need not be built."[9]

---

[9] The plaintiff also contends that our interpretation of § 47-280 (a) leads to an untenable result, namely, that a developer can be obligated to complete

The judgment is reversed and the case is remanded with direction to deny the plaintiff's motion for summary judgment, to grant the defendant's motion for summary judgment and to render judgment for the defendant.

In this opinion the other justices concurred.

all improvements depicted in a site plan in perpetuity, without leeway to change its mind or to withdraw land from a financially unfeasible project. As we have explained, however, a declarant may avoid such a result simply by labeling improvements on the site plan "need not be built." As a general matter, therefore, when a developer fails to include this statutorily prescribed label on the site plan, obligating a declarant to complete the project as represented on the site plan appears to be precisely what the act was intended to accomplish.